341 A.2d 71

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Gregory CARLOS a/k/a Carl Wesley Ray,**
**Appellant (two cases).**

Supreme Court of Pennsylvania.

Submitted Nov. 11, 1974.

Decided July 7, 1975.

Donald C. Marino, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst.

Dist. Atty., Chief, Appeals Div., Douglas B. Richardson, Asst. Dist. Atty., Mark Sendrow, Asst. Dist. Atty., Asst. Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Gregory Carlos, also known as Carl Wesley Ray, appeals from the judgments of sentence imposed following his conviction by a jury of murder in the second degree and of aggravated robbery.[1]

The evidence at trial established that on Janury 19, 1972, Carlos and two other males perpetrated an armed holdup of a bar in Philadelphia and that during the robbery Carlos fatally shot one of the patrons. While the sufficiency of the evidence to warrant the convictions is not challenged, it is urged that certain rulings by the trial court were erroneous and so prejudicial as to require a new trial.

The prime complaint is that one of the three eyewitnesses who testified at trial and identified Carlos in court as one of the felons was permitted, over objection, to also testify that after the occurrence he viewed photographs exhibited to him by a police detective and identified Carlos in one of the photographs.[2] It is argued

1. A prison sentence of 10 to 20 years was imposed on the murder conviction and a prison sentence of 5 to 10 years to run consecutively was imposed on the aggravated robbery conviction. A direct appeal from the first mentioned sentence was filed in this Court. A direct appeal from the last mentioned sentence was filed in the Superior Court and then certified here.

2. The testimony was as follows:
 "Q. Did you have occasion to view some photographs shown to you by Detective Lyons?
 "A. Yes, sir.
 "Q. Approximately how many photographs were there?

that the jury could have inferred from the police detective's possession and display of the photos that they were "mug shots" and Carlos had a prior criminal record, since the significance of "mug shots" is common knowledge.

 It is well-settled that a testimonial reference to a photograph may constitute reversible error if a jury could reasonably infer therefrom prior criminal activity on the part of the accused. *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972). However, it is also well-settled that every reference to a photograph does not necessarily require reversal. *Commonwealth v. Allen,* supra.

"[T]he controlling question is whether or not a juror could *reasonably infer* from the facts presented that the accused had engaged in prior criminal activity. [As such] a mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; . . ."

*Id.* at 181, 292 A.2d at 375. [Emphasis supplied.] Instantly, there was but a mere passing reference and thus no reversible error.

 The Commonwealth's witness merely replied in the affirmative when asked if he identified Carlos from approximately ten photographs displayed by a police detective. Barring this brief reference to the photographic

"A. Approximately ten photographs.
"Q. In viewing those photographs, sir, did you make an identification of any of those photographs?
"A. Yes, sir.
"Q. And whose photographs did you identify?
"A. The gentleman there. (Indicating) the gentleman seated.
"Q. Indicating Mr.—
"A. Carlos.
"Q. Carlos. And you identified him as what?
"A. As the man that put the gun at me at the bar at the time of the incident."

identification, the photographs were never displayed, marked, admitted, or otherwise referred to at trial. *Cf. Commonwealth v. Craft,* 455 Pa. 616, 317 A.2d 213 (1974). Moreover, the photographs were never identified or characterized as "mug shots" or even as photographs from a police file. Cf. *Commonwealth v. Smith,* 454 Pa. 515, 314 A.2d 224 (1973). In addition, there was no suggestion that the photographic identification was conducted in a Police Identification Unit, or that when the photograph was displayed a portion of it had to be deleted or covered over. In other words, aside from the fact that a police detective displayed the photograph, there was nothing else linking it to the police. It is highly unlikely that a juror would conclude from this alone that Carlos had engaged in prior criminal conduct. Thus, "there was nothing that should reasonably suggest to a jury that the photographs were obtained by police officials as a result of the defendant's prior criminal activity." *Commonwealth v. Allen,* supra 448 Pa. at 182, 292 A.2d at 376. See also *Commonwealth v. Craft,* supra; *Commonwealth v. Banks,* 454 Pa. 401, 311 A.2d 576 (1973).

■ Carlos next complains that the assistant district attorney's questioning of certain defense witnesses went beyond the scope of cross-examination and constituted "unprofessional conduct". The pertinent facts are these.

Carlos did not testify at trial. However, he offered the testimony of his mother and two brothers who stated Carlos was unmarried and resided in their home in Baltimore, Maryland, continuously from December 25, 1971, to March of 1972. During cross-examination, the assistant district attorney asked one of these witnesses, "Do you know the woman he [the appellant] was living with in Philadelphia?" An immediate objection to the question was sustained. The Commonwealth's officer then inquired, "You know his wife, Barbara Carlos, who lives in Philadelphia?" An immediate objection to this ques-

tion was likewise sustained. A mistrial was not request-ed. It is now urged that by pursuing this line of question-ing, "the [assistant] district attorney tried to paint an unfavorable image of the Appellant in the minds of the jury, which was completely misleading". We are not so persuaded. Without ruling on the propriety of the chal-lenged questions, we are hard pressed to see any result-ing prejudice to Carlos under the circumstances. Clear-ly, it was not such a situation that would create a fixed bias in the minds of the jury and prevent an objective and fair verdict. Cf. *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974). See also *Commonwealth v. Martin*, 461 Pa. 289, 336 A.2d 290 (1975); *Common-wealth v. Hoffman*, 439 Pa. 348, 266 A.2d 726 (1970).

Finally, Carlos contends the trial court erred in deny-ing his pretrial petition for a writ of habeas corpus. He argues his extradition from Maryland to Pennsylvania was illegal because he was not in Pennsylvania at the time the crime was committed. Assuming this issue is properly before us at this time, the trial court did not err.

■■ The legality of extradition must be challenged in the asylum state prior to extradition to the demanding state. *Ripepi Extradition Case*, 427 Pa. 507, 235 A.2d 141 (1967); *Commonwealth ex rel. Edgar v. Davis*, 425 Pa. 133, 228 A.2d 742 (1967); *Commonwealth ex rel. Raucci v. Price*, 409 Pa. 90, 185 A.2d 523 (1962). This is so because "it is the obligation of the courts of the asy-lum state to make certain that the requirements of the Uniform Criminal Extradition Act, supra, have been sat-isfied before the accused is surrendered to the demand-ing state. *Commonwealth ex rel. Aronson v. Price*, 412 Pa. 493, 194 A.2d 881 (1963)." *Commonwealth ex rel. Kelly v. Santo*, 436 Pa. 204, 206, 259 A.2d 456, 457 (1969). See also the Uniform Criminal Extradition Act

of July 8, 1941, P.L. 288 § 3, 19 P.S § 191.3. The courts of Maryland having already decided the issue adverse to Carlos, the trial court properly refused to retry it. See 31 Am.Jur.2d § 74.

Judgments affirmed.