436 A.2d 167

**COMMONWEALTH of Pennsylvania**

v.

**James Leroy SUTTON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 17, 1981.

Decided Oct. 29, 1981.

J. David Ungerman (Court-appointed) Erie, for appellant.

Michael J. Veshecco, Dist. Atty., Frank Scutella, Asst. Dist. Atty., Erie, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from a judgment of sentence of the Court of Common Pleas of Beaver County imposed on verdicts of guilty of murder of the first degree and robbery.* Appellant, James Leroy Sutton, seeks a new trial on the basis of two alleged evidentiary errors. We reject appellant's claims of error and, hence, affirm.

In the early mornings hours of August 19, 1973, three men burglarized and robbed a small bar and its patrons in Erie,

---

* The offenses were committed on August 19, 1973. At that time, the Crimes Code defined murder of the first degree to include felony murder. 18 Pa.C.S.A. § 2502 (1973). Under the revised Crimes Code, now in effect, felony murder is classified as a murder of the second degree. 18 Pa.C.S. § 2502.

Pennsylvania. The entire incident lasted several minutes. One of the men wore a red ski mask and was armed with a shotgun. During the robbery, the gunman shot and killed James T. Hogan, a patron of the bar. Thomas McBride, another patron, attempted to disarm the gunman after the shooting. The gunman's ski mask came off during his fight with McBride at which time McBride found himself face to face with the gunman. After a brief struggle, McBride was struck from behind on the head, became momentarily stunned, and gave up the fight.

That morning, McBride gave police a description of all three robbers. McBride's description of the gunman included the gunman's race, height, weight, color of hair, and hair length.

Appellant was arrested on August 23, 1973. Subsequently, appellant was included in a lineup which was recorded on videotape. Counsel for appellant was present at the lineup. On September 11, McBride viewed this taped lineup and identified appellant as the gunman who had worn the red ski mask.

At trial, McBride testified that he had previously identified appellant from the out-of-court videotaped lineup. McBride also made an in-court identification of appellant as the gunman.

Appellant argues that the lineup was impermissibly suggestive and that, therefore, McBride's testimony concerning his identification of appellant at the videotaped lineup and his in-court identification of appellant should have been suppressed. Because the videotaped lineup was not unduly suggestive and McBride's in-court identification was not impermissibly affected by the out-of-court identification, we reject appellant's claim.

■ Whether an out-of-court identification is to be suppressed as unreliable, and hence violative of due process, is determined from the totality of the circumstances. The circumstances to be considered include

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the confrontation, and time between the crime and the confrontation."

*Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977). Accord, *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." Id.

▓▓ There are many factors which support the reliability of McBride's identification from the videotaped lineup. McBride had several minutes to observe the gunman at the time of the offense. When the gunman's ski mask came off in the struggle over the shotgun, he and McBride were less than a foot apart. Although the lighting in the bar was dim there was enough light for McBride to make out the features of the gunman. Shortly after the shooting, McBride gave police a detailed description of the gunman. The videotaped lineup from which McBride identified appellant as the gunman was conducted less than a month after the incident.

Despite these indicia of reliability, appellant asserts that the videotaped lineup was impermissibly suggestive because four of the six persons in appellant's lineup had also participated in another videotaped lineup which had been previously viewed by McBride. However these four men were clean shaven when they appeared in the earlier lineup. When they appeared in appellant's lineup all had donned mustaches so that their facial appearance would conform to appellant's. Moreover, both lineups were taped in black and white thereby minimizing distinctions that might have appeared if the lineups had been taped in color. Weighing the allegedly "corrupting effects" of the lineup against the factors which support the validity of the identification, we conclude that McBride's out-of-court identification is reliable.

Appellant's challenge to the in-court identification on the ground that the out-of-court identification was unduly suggestive necessarily must fail. In any event, McBride's in-court identification similarly satisfies the reliability standard. The factors supporting the validity of McBride's out-of-court identification also support the validity of his in-court identification. See *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Commonwealth v. Jones*, 285 Pa.Super. 112, 426 A.2d 1167 (1981); *Commonwealth v. Mellon*, 279 Pa.Super. 350, 421 A.2d 234 (1980).

■ Appellant also challenges expert testimony relating to the presence of hemoglobin on a pair of appellant's boots. The Commonwealth introduced evidence at trial that the murder victim had lost a substantial amount of blood, that the gunman had been in close proximity to the victim and that appellant had been wearing work boots on the night of the incident. The Commonwealth then introduced a pair of work boots belonging to appellant. The expert witness testified for the Commonwealth that the soles of these boots tested positively for hemoglobin. The expert was unable to state the age of the hemoglobin or whether it had been derived from human or animal blood.

Appellant contends that the expert's testimony should have been suppressed because its probative value was outweighed by its prejudicial effect. Contrary to appellant's assertion, there is nothing to indicate that the challenged evidence was sufficiently prejudicial to outweigh its probativeness. We share the view of the Supreme Court of Arizona which, in addressing a similar claim, has observed:

"The expert's testimony along with the other testimony at trial constitutes probative circumstantial evidence that [appellant] was present when the victim was killed. Although the probative value of the evidence may have been weakened by the inability of the expert to testify that it was human blood, so was the possible prejudicial effect. A determination of the weight merited by such testimony was therefore properly left to the jury to make, in light of all the testimony before it."

*State v. Carriger*, 123 Ariz. 335, 599 P.2d 788 (1979). Thus, the court did not commit error in permitting the expert to testify.

Accordingly, the judgment of sentence is affirmed.