446 A.2d 892

**COMMONWEALTH of Pennsylvania**

v.

**James WHEELER, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 16, 1982.

Decided June 25, 1982.

Ben W. Joseph, Philadelphia (Court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Deborah Fox, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

James Wheeler appeals from judgments of sentence of the Court of Common Pleas of Philadelphia imposed on verdicts of guilty of murder of the first degree and possession of an instrument of crime.[1] Appellant seeks a new trial on the grounds that identification testimony was improperly admitted at trial and that the record fails to establish the unanimity of the jury's verdict on the charge of murder. We reject appellant's contentions and affirm.

On December 5, 1978, appellant, in the presence of Michael Cottle, gave the victim, Bonito Morris, five dollars with which to purchase a quantity of marijuana. When Morris failed to deliver the marijuana, appellant went to the home of Michael Cottle and his brother, Kelly Cottle, acquaintances of Bonito Morris. Lonnie Gibbs, another acquaintance of the victim, answered the door and told appellant that Morris was not there. Appellant then threatened that "when I catch him, I'm going to hurt him. I'm going to put him underground. I don't like anybody playing with my money." Two days later, as the victim and friends were playing football on a street in Philadelphia, appellant approached Morris from behind and fatally shot him in the back.

1. Appellant was sentenced to life imprisonment on the charge of murder of the first degree. The court also imposed a concurrent two and a half to five years' sentence on the charge of possession of an instrument of a crime.

At trial, Michael Cottle and Kelly Cottle made in-court identifications of appellant. Michael Cottle identified appellant as the man who had attempted to buy marijuana from Morris and as the man he had seen "turning around walking toward the other direction" immediately after the shooting. Kelly Cottle, who testified that he had witnessed the shooting, identified appellant as the assailant. In addition, a police officer testified that Michael and Kelly Cottle had previously identified appellant from a photographic array.

Lonnie Gibbs identified appellant as the man who had threatened Morris. Gibbs also viewed the photographic array and identified appellant's picture. However, at trial, no evidence of this out-of-court identification was introduced.

Appellant contends that the photographic array was impermissibly suggestive because, although Kelly Cottle told police prior to viewing the photographs that the assailant had worn a beard, only two of the photographs in the array depicted men with beards. On this basis, appellant argues that both the police officer's testimony as to the out-of-court identifications and the witnesses' in-court identifications should have been suppressed.

The challenged photographic identification took place approximately two months after the killing, after police had obtained evidence linking appellant with the crime. During the course of this two-month period the police questioned appellant and took a black and white Polaroid photograph of him. This photograph was used to select ten black and white Polaroid photographs from police files which, together with appellant's photograph, comprised the photographic array. Each of the ten selected photographs was of a man similar to appellant in color, weight, age and facial characteristics. A review of the photographs shows that nine of the eleven depicted men with mustaches. Two of the photographs, including that of appellant, depicted a man with both a beard and mustache.

■ Appellant's challenge to the photographic array on the ground that only the photograph of himself and one

other man were of men with beards must fail in light of the substantial similarity among the photographs displayed. All but two of the men had some facial hair; even more important, the permanent physical characteristics of the men were very similar. Indeed, as the trial court noted, one of the photographs depicted a "look-alike" of appellant.

Because we conclude that the trial court properly rejected appellant's claim that the photographic array was impermissibly suggestive, it follows that both the police officer's testimony regarding the out-of-court identifications and the in-court identifications of witnesses who viewed the photographic array were properly admitted into evidence. See *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Commonwealth v. Sutton*, 496 Pa. 91, 436 A.2d 167 (1981).

■ Appellant's claim fails not only because the photographic array was far from impermissibly suggestive, but also because the circumstances surrounding the events in question support the reliability of the identifications of appellant made at the photographic array and in court.

Lonnie Gibbs, who testified that appellant had come to the Cottle home on the evening of December 5, 1978, and threatened to hurt the victim, also testified that he had spoken with appellant for approximately two minutes that evening on the front porch under well-lighted conditions. The evidence indicated that the killing took place at dusk in an area brightly illuminated by lights from an automobile dealership lot across the street. Michael Cottle, who testified that he had seen appellant attempt to purchase marijuana from the victim, also testified that immediately after the shooting he had seen a man turn from the victim and walk down the street. His description of the man's appearance was similar to the appearance of appellant. Kelly Cottle testified that he had observed the assailant as the assailant approached the victim, had seen the assailant shoot the victim in the back, and had seen the assailant's face as the assailant left the scene. In light of these indicia of reliability attaching to the in-court and out-of-court identifications,

it was well within the jury's province as factfinder to credit the identification testimony. *Commonwealth v. Sutton*, supra.

■ Appellant's remaining claim of error, that the record fails to establish the unanimity of the jury's verdict of guilty on the charge of murder of the first degree, focuses upon one juror's ambiguous response during the jury poll. The following colloquy occurred:

"THE CRIER: * * * In Bill of Information Number 1467 of March 1979 the defendant, James Wheeler, is charged with murder. To this Bill of Information how do you find the defendant?

JUROR NUMBER 9: Well, I have to tell the truth. I can't say the man is guilty, but with all the evidence I have to say he's guilty.

THE COURT: Just tell us what you say.

THE CRIER: How do you find the defendant?

JUROR NO. 9: Well—

THE CRIER: May I read the bill back?

THE COURT: Yes, read it back.

THE CRIER: In Bill of Information Number 1467 of March 1979 the defendant, James Wheeler, is charged with murder. To this Bill of Information how do you find the defendant?

JUROR NUMBER 9: Well, all the evidence points to him so—

THE COURT: Just tell us what is your verdict. Is it guilty or not guilty?

JUROR NUMBER 9: Guilty.

THE CRIER: Is your verdict guilty or not guilty?

JUROR NUMBER 9: I'll say guilty.

THE CRIER: To what degree?

JUROR NUMBER 9: First degree."

Appellant is correct that the juror initially gave an ambiguous response during the jury poll; however, we disagree with his assertion that the juror did not amply clarify her verdict. When the juror said "guilty," and then stated that

the degree of guilt was "first degree," she gave her clear and unequivocal assent to the verdict of guilty of murder of the first degree. *Commonwealth ex rel. Ryan v. Banmiller,* 400 Pa. 326, 162 A.2d 354 (1960), *cert. denied,* 364 U.S. 852, 81 S.Ct. 99, 5 L.Ed.2d 76 (1960). Thus, the verdict upon which judgment of sentence for murder of the first degree was entered was correctly recorded as unanimous.[2]

Accordingly, the judgments of sentence are affirmed.

2. When a juror gives an equivocal response, a court is to interrogate that juror in order to assure that the "jury's verdict reflects the conscience of each of the jurors." *Commonwealth v. Martin,* 370 Pa. 587, 109 A.2d 325 (1954). See Comment, ABA Standards Relating to the Administration of Criminal Justice, Trial By Jury § 5.5 (2d ed. 1978). See also *United States v. McCoy,* 429 F.2d 739 (D.C.Cir.1970). Where, as here, a juror clarifies her response, the court properly acts within its discretion by accepting the juror's verdict.