512 A.2d 596

COMMONWEALTH of Pennsylvania, Appellee,

v.

Albert BROWN, a/k/a Albert Clemons, a/k/a Elbens Brown, Appellant.

Supreme Court of Pennsylvania.

Submitted Sept. 19, 1985.

Decided June 30, 1986.

John H. Corbett, Jr., Paulette J. Balogh, Office of the Public Defender, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

McDERMOTT, Justice.

This is an appeal from an order of the Superior Court which affirmed Judgments of Sentence of the Court of Common Pleas of Allegheny County.

Appellant was convicted of two (2) counts of armed robbery in connection with the robberies of a gas station and fast food restaurant. Appellant was sentenced to consecutive terms of ten (10) to twenty (20) years for each count of robbery. Post trial motions were denied and appellant's conviction was subsequently affirmed by the Superior Court, 337 Pa.Super. 627, 487 A.2d 437. This Court granted allocatur to specifically address appellant's contention that the identification procedures utilized by the Commonwealth were prejudicial to the point of warranting a new trial. We disagree and therefore affirm based on the reasons set out below.

The robberies in question were committed on the night of March 4, 1982, within approximately one and one-half (1½) hours of one another. The trial court found that the respective victims, numbering three (3) altogether, had ample time in a well-lit area to view the perpetrator's face. The clerk-victims described the offender as being a black male, approximately five foot, ten inches (5'10") tall, wearing a black leather coat, having a "Fu Man Chu" mustache, having a unique hairstyle (a "gerry curl") and having a dark complexion. On the basis of these descriptions, the police conducted an investigation and composed two (2) separate photo arrays, consisting of ten (10) and eleven (11) photos respectively. The arrays were shown to the victims several days after the robberies and all three (3) witnesses selected a photograph depicting appellant as the perpetrator of the robberies.

At trial, over defense counsel's objections, the Commonwealth displayed one of the photo arrays consisting of ten (10) photographs to the jury. The pictures, which included appellant, showed front and side views of each man. Cardboard folder frames were placed around each photo to obscure the police identification numbers hanging from each man's neck, but the chains upon which the identification placards hung still remained visible. The second photo array was not shown to the jury, although testimonial

references were made to it. Neither array went out with the jury during deliberations.

The following two (2) issues are before the Court on this appeal: (1) whether the photo arrays used by police led to a tainted subsequent in-court identification; and (2) whether appellant was prejudiced and denied a fair trial by the jury viewing the photo array used in the police identification leading to appellant's identification.

Appellant contends that the photo arrays utilized by the police were of such a suggestive nature that they created a substantial likelihood of misidentification. Furthermore, appellant maintains that the trial court erred in allowing the jury to see the one photo array because the quality of the photos was that of a "mugshot", permitting the jury to infer that appellant had a prior criminal history. The Commonwealth counters that the identification process utilized by the police was proper and permissible since the photographs employed in the array bore a substantial similarity to the appellant; the witnesses had an opportunity to view appellant for a substantial amount of time under adequate lighting conditions; and finally, the photographs were not prejudicial merely because they depicted appellant in front and side profiles.

The trial court found that the photographic array was "assembled in a manner to present the viewer with an objective selection of similar choices." It also stated that there was no evidence that the photographs were presented by the authorities to the witnesses in an improper fashion. As to appellant's allegation of error concerning the jury's viewing of the photographs, the trial court held that there was no error in the jury viewing photographs from which witnesses selected an individual as the perpetrator of a crime where the array was entirely devoid of any reference to a prior criminal record.

The Superior Court, addressing only the issue of the jury's viewing of the photographs ("mugshots"), found the absence of any prejudicial reference to the photographs

blunted the impact of the jury's view of them, and thus affirmed the trial court's judgment of sentence.

Appellant's first contention, concerning the prejudicial nature of the identification process employed by the police, is without merit. The United States Supreme Court has established the standard by which to measure the objectiveness of an identification procedure.

> [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). *See also Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

■ Where, as here, the photographs employed in an array possess substantial similarities, the array is not impermissibly suggestive. Any testimony regarding out-of-court identifications or in-court identifications by witnesses who viewed the array will likewise be properly admitted into evidence. *See Commonwealth v. Wheeler,* 498 Pa. 374, 446 A.2d 892 (1982).

The two arrays at issue in the instant appeal were composed of photographs of ten and eleven men including appellant, all of whom were of the same race, possessed the same basic physical make-up, with several bearing a striking resemblance to appellant himself. Based on our previous holdings, the identification procedure utilized by the police here led to a constitutionally sufficient verification of appellant as the perpetrator. *See Wheeler, id.; Commonwealth v. Sutton,* 496 Pa. 91, 436 A.2d 167 (1981).

Appellant's second and final contention concerns the jury's viewing of one array following testimonial references made to it by several witnesses. His contention is grounded upon the fact that the photographs were "mugshots",

and he argues that reference to them, coupled with the jury's viewing, impermissibly alluded to a prior criminal history. This argument is not persuasive.

■ There is no *per se* rule against the use of "mugshots" in this Commonwealth as a method of identification. *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972). The use of any photograph during an identification procedure is analyzed under the facts and circumstances of each particular case. *Id.,* 448 Pa. at 179–180, 292 A.2d at 374.

In *Allen,* we held that "after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." 448 Pa. at 181, 292 A.2d at 375. *See also Commonwealth v. Reiss,* 503 Pa. 45, 468 A.2d 451 (1983).

■ In the present case it is undisputed that the appellant was identified by a photo array from police photo files. At trial the source of that identification was put to scrutiny (by the appellant), and the photos, commonly called "mugshots" were shown to the jury to compare similarities and to generally put to test the reliability of an identification from the photo array. The appellant contends that the photos were identifiable as "mugshots" and therefore the jury could conclude that appellant's "mugshot" was on file with the police, suggesting or indicating that the appellant had prior police contact, all to his prejudice.

Previously, we have approved of attempts to sanitize "mugshots" prior to their introduction to the jury. *See Commonwealth v. Hoss,* 445 Pa. 98, 283 A.2d 58 (1971). However, we have never held that such sanitization was a *per se* requirement. What we have held, as we noted above, is that photographic evidence should not give rise to an inference of prior criminal activity. *Commonwealth v. Allen, supra.*

*Allen* assumed that the unexplained possession by the police of a defendant's photo was proof that the defendant had a previous conviction. Such, of course, is not necessar-

ily so. One's picture may be in the possession of the police even though the person was neither charged, tried nor convicted of any crime.

Leaving aside the fundamental logic that a previous record does' not prove present guilt, the possession by the police of one's photo does not ineluctably prove a previous *conviction.* At the most it proves only that the police had a photo of the defendant on file.

When an identification is made from police photo files, the photos become an integral and inseparable part of the evidence. When the initial identification is challenged at trial and their reliability and fairness put to question, they become evidence subject to examination by the jury. At that time it is difficult, if not impossible, consistent with the truth, to shield the fact that a defendant's picture was obviously on file prior to his identification. Even when the file photos are not challenged and the photos are not shown to the jury, but somehow they have been alluded to during the course of the trial, it is a small deduction to conclude that for some reason the defendant had prior police contact of some kind. However, as we emphasized above, prior contact with the police in itself proves nothing. It does not prove a prior record or previous crime, it only proves a previous contact.

Police photo files are an essential, elemental, absolute necessity for the detection of crime and the safety of the public. They are not a secret, they have existed since photography. That they exist and are used on a 24 hour basis, and are a tool of identification in almost every case where the perpetrator is not personally known to a victim, is common everyday knowledge. To *obviate* their use upon the ground that they are a possible source of prejudice is far too large a step in this mobile world of quick and easy escape.

Once, therefore, a police photo file is used that fact can neither be denied nor obviated. It is part of the case and we must accept the fact that there is a possible prejudice. It is here that we must rely upon the common sense of the

jurors, their commitment to their oath, fundamental fairness and the implacable logic that the mere possession by the police of one's photo does not prove a prior conviction or the present accusation. This may sound but superficial verbiage, mere words that accepts an ineradicable prejudice, under a cool, impractical logic. There is, of course, no fault in the logic and there is no reason for us to believe that a jury will not accept that logic and indeed that fact. If we accept that a jury will not follow the law and the logic of this occasion, a logic so obvious, so clear, so much a part of common experience, how can we believe that they ever do.

Other rules of logic and constitutional standing, when exercised by a defendant, arguably contain equal possibilities of prejudice. We are satisfied for instance, that a properly instructed jury will not hold the silence of an accused against him; that arrest and indictment are not evidence of guilt; that the testimony of a police officer, doctor, clergyman, scientist or others of like standing have no greater weight than any other interests. We are satisfied that irrelevant prejudicial answers by a witness can be obviated by a charge of the court. Given that police photo files are an absolute necessity for the detection of crime, we must accept that where used, the jury can be instructed and will respond to a definitive charge by the court that possession by the police of one's picture, of itself, proves no accusation, is irrelevant to any consideration before them, and is not inconsistent with innocence.

■ The rationale of our previous decisions are not here altered. Previous conviction is not now, as heretofore, an argument that may be used to bolster an accusation. Hence, neither a reference nor an argument may be made from the existence of police photo files that indicate that they imply or suggest a previous record of conviction. Where used in evidence the court shall charge the jury, when requested by a defendant, that because one's photo is in the possession of the police does not prove a previous conviction, and suggests no more than that there was a previous police contact, the reason for which, is not known

and has no bearing on the issues before them. If we indulge the view that jurors cannot or will not follow the law, we are left with nothing.

The Order of the Superior Court is affirmed.

HUTCHINSON, J., files a concurring opinion.

LARSEN, J., concurs in the result.

FLAHERTY, J., files a dissenting opinion in which NIX, C.J., and ZAPPALA, J., join.

HUTCHINSON, Justice, concurring.

I join the opinion announcing the judgment of the Court in its determination that the identification procedure used by the police was proper.

I concur in the result only, however, in regard to the jury's viewing the array of police file photographs. On the facts of this case, I am persuaded that use of the photographs as evidence, including showing them to the jury, was not reversible error. Indeed, at trial, defense counsel alluded to the photographs in her closing argument and suggested that they be sent out with the jury.[1] N.T. November 22, 1982 (Partial Transcript), at 25.

I do not equate the use of police file photographs as demonstrative evidence with the fact that arrest and indictment are not evidence of guilt or with the accused person's right to remain silent. These latter are fundamental aspects of our system of justice. The prosecution has no such fundamental right to the introduction and admission of police photographs into evidence. Nor would I equate the prejudice inherent in improperly presented photographs with the lesser prejudice which may be inherent in the testimony of an expert or other witness whose profession may give an appearance of greater credibility to the witness's testimony.

I agree that police file photographs are necessary for the detection of crime. A determination of whether use of

---

1. The photographs were not sent out with the jury.

these photographs is prejudicial must be based upon an analysis of the individual case. *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972). I do not agree that an instruction to the jury is sufficient in all cases to cure any possible prejudice.

The opinion announcing the judgment of the Court does not explicitly disapprove *Allen,* wherein this Court held:

[A]fter the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity.

... Once it is determined that a jury could reasonably conclude from the photographic reference prior criminal activity on the part of the defendant prejudicial error has been committed.

448 Pa. at 181–82, 292 A.2d at 375. It appears to me, however, that Mr. Justice McDermott implies that an instruction to the jury, when requested by defense counsel, is always sufficient to ensure that the jury will not make any impermissible inferences.

I believe we must examine the facts and circumstances of the given case to determine whether a defendant has been so prejudiced by the use of police file photographs that a mistrial is necessary. A *per se* rule on this problem is not appropriate.

FLAHERTY, Justice, dissenting.

The robberies of which appellant was convicted occurred within approximately two hours of each other in neighboring sections of the City of Pittsburgh. After obtaining descriptions of the guilty party from the victims involved in the two robberies, the police conducted an investigation and prepared photographic arrays which were presented to those victims. The victims recognized a photograph of appellant, and identified appellant as the perpetrator of the robberies.

At trial, despite strenuous objection by defense counsel, the prosecution displayed to the jury ten photographs which

had been used in one of the aforementioned photographic arrays. The pictures, appellant's among them, had been selected from police files of individuals with police records. These pictures showed men in front-and-side views, and the police identification numbers on the pictures had been obscured by cardboard folder frames. Appellant contends that the trial court erred in permitting the jury to see these photos, because the photos were unmistakably "mug shots" which conveyed to the jury the fact that appellant had committed other criminal offenses in the past.

It is well established that, in a criminal prosecution, evidence of a defendant's prior criminal conduct may not generally be introduced as substantive evidence of guilt as to a present charge. *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). As stated in *Commonwealth v. Trowery*, 211 Pa.Super. 171, 173–174, 235 A.2d 171, 172 (1967), "[t]he presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence."

The test applicable to determining whether photographs of the accused, or references to such photographs, were properly admitted was set forth as follows in *Commonwealth v. Allen*, 448 Pa. at 181–182, 292 A.2d at 375,

[A]fter the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity.

... Once it is determined that a jury could reasonably conclude from the photographic reference prior criminal activity on the part of the defendant prejudicial error has been committed.

Thus, if the pictures themselves, or testimony relating thereto, "can be fairly characterized as conveying to the jury, either expressly or by reasonable implication, the fact of prior criminal offenses, a reversal of a verdict of guilt must result ..." *Commonwealth v. Clark*, 453 Pa. 449, 453, 309 A.2d 589, 591 (1973). See also *Commonwealth v.*

*Reiss,* 503 Pa. 45, 49–50, 468 A.2d 451, 453 (1983); *Commonwealth v. Carlos,* 462 Pa. 262, 265–266, 341 A.2d 71, 72–73 (1975); *Commonwealth v. Turner,* 454 Pa. 439, 311 A.2d 899 (1973).

In the present case, the photographs in question clearly would have conveyed to the jury a reasonable implication that appellant had engaged in prior criminal activity. This is so notwithstanding the fact that, as the Commonwealth has pointed out, there were not present in this case testimonial references to the photos which identified the photos as having come from police department files. The Commonwealth claims that the lack of such testimonial references makes it likely that the jury believed the photos came from a neutral source. However, the Commonwealth elicited testimony from three of the robbery victims that appellant's picture was identified from photo arrays arranged by police, and, although the victims testified that the photos were shown to them at their places of employment rather than at a police station, the nature of the photographs is such as to indicate that the photos did not come from a neutral source.

The photographs used in one of the arrays, and submitted to the jury for inspection, depicted appellant and nine others in front and side views. Cardboard folder frames were attached to the photos to obscure from the jury's view the police identification numbers on the photos. An examination of the photographs reveals that the jury could not help but have concluded that the photo array was composed of "mug shots." Indeed, all of the photos are *identical* in format, the format being one traditionally associated with "mug shots." The photographic lighting, background, pose, and print size does not vary from one photo to another. Despite the fact that police identification numbers have been obscured by cardboard frames, the nature of what is being concealed by the frames is immediately apparent. In all of the photos, including appellant's, there is visible a chain around the neck of the individual photographed. The chains are positioned in a manner that would be expected to support a sign displaying a police identifica-

tion number, and, in fact, in some of the photos in the array there is visible the top edge of a sign attached to the chain. The sign is not visible in the photo of appellant, but the chain is, and the inference to be made is clear. In one of the photos in the array it is even possible to discern the word "POLICE" on the top edge of the sign. See *Commonwealth v. Dickerson*, 267 Pa.Super. 492, 494, 406 A.2d 1149, 1150 (1979) ("[O]ne would be quite naive to believe the jury could not reasonably infer the photographs were 'mug shots'.").

The inferences induced by front and side view pictures, to which coverings have been attached to obscure police identification numbers, were described in *Barnes v. United States*, 365 F.2d 509, 510–511 (D.C.Cir.1966):

> The double-shot picture, with front and profile shots alongside each other, is so familiar, from "wanted" posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic. The rudimentary tape cover placed over the prison numbers on the photograph, and over the notations on the reverse side, neither disguised the nature of the picture nor avoided the prejudice. If anything, by emphasizing that something was being hidden, the steps taken here to disguise the nature of the picture may well have heightened the importance of the picture and the prejudice in the minds of the jury.

In this Commonwealth, there has been established a uniform proscription against mention or use, at trial, of "mug shots" of the accused, since such pictures inherently convey an impression that the accused has engaged in prior criminal activity. *Commonwealth v. Reiss*, 503 Pa. at 50, 468 A.2d at 453; *Commonwealth v. Carlos*, 462 Pa. at 266, 341 A.2d at 73; *Commonwealth v. Dickerson*, 267 Pa.Super. at 494, 406 A.2d at 1150 (1979); *Commonwealth v. Trowery*, 211 Pa.Super. at 174–175, 235 A.2d at 173. The photographs shown to the jury in the instant case would

reasonably have been perceived to be "mug shots," and appellant should, therefore, be granted a new trial.

The Commonwealth contends that, if its position that the photos would not have been perceived as "mug shots" is rejected, a balancing analysis should be invoked whereby it might be determined that the prejudice to appellant was outweighed by the Commonwealth's need to submit the photos to the jury on the issue of identity in this case where identification was strongly contested due to appellant's having asserted an alibi defense. This Court has previously considered and rejected the utilization of such a balancing test, holding instead that photos, or references thereto, which create a reasonable inference of a defendant's prior criminal record are, in and of themselves, so highly prejudicial as to mandate a new trial. *Commonwealth v. Allen*, 448 Pa. at 183, 292 A.2d at 376.

The high degree of prejudice to appellant's right to a fair trial, inuring as a result of introduction of the instant "mug shots," is substantially ignored in the opinion announcing the judgment of the Court authored by Mr. Justice McDermott. It is naive to assume, as that opinion does, that jurors will not deduce, based upon the fact that the "mug shots" exist, that the accused has had a record of prior *criminal* contact with the police. Police do not collect "mug shots" merely in response to an avocational interest in photography. Nor are such photographs taken of persons with whom police merely socialize or engage in other innocuous pursuits.

Although the Opinion Announcing the Judgment of the Court authored by Mr. Justice McDermott asserts that "[t]he rationale of our previous decisions [is] not here altered," the reality is that our previous decisions are substantially eroded, indeed overruled, by departing from the longstanding rule that an accused must not be prejudiced by inferences of prior criminal activity, and by holding, in effect, that inferences of prior criminal activity may now be introduced via "mug shots." Believing the long-

standing rule to be worthy of continued adherence, I dissent and would grant appellant a new trial.

NIX, C.J., and ZAPPALA, J., join this dissenting opinion.