535 A.2d 169

**COMMONWEALTH of Pennsylvania**

**v.**

**Paul DESABETINO, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 13, 1987.

Filed Dec. 24, 1987.

Bruce A. Carsia, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Com.

Before TAMILIA, POPOVICH and CERCONE, JJ.

TAMILIA, Judge:

By an Order dated May 5, 1987, appellant brings this appeal nunc pro tunc. The facts and procedure are as follows.

Appellant was charged on July 25, 1984 with three counts in connection with a July 26, 1983 robbery of an Allegheny County pharmacy. The counts included robbery, 18 Pa.C. S.A. § 3701(a)(1)(ii), theft by unlawful taking, 18 Pa.C.S.A. § 3921(a), and criminal conspiracy, 18 Pa.C.S.A. § 903(a)(1). Although appellant had been arrested and charged with one count of robbery and one count of criminal conspiracy on July 28, 1983, the charges against him were dismissed on August 11, 1983 by a district justice because no witness could positively identify him at the hearing or at the photo array. An investigating grand jury which convened in February of 1984 concluded probable cause did exist from the record to warrant the filing of a criminal complaint against appellant and, accordingly, he was charged with the above. Appellant, on December 28, 1984, filed an omnibus motion and a motion to quash the information and to suppress statements. The motion to quash was denied on January 10, 1985, while the motion to suppress was withdrawn. Appellant pled not guilty and proceeded to trial. A jury, on January 17, 1985, returned a verdict of guilty at all three counts.

Trial counsel filed motions for new trial and in arrest of judgment on January 28, 1985; however, counsel then sought leave to withdraw and different counsel was appointed to represent the appellant. New counsel filed an additional post-verdict motion on May 29, 1985. Appellant then retained a third counsel to represent him and, on June 3, 1985, that counsel argued post-verdict motions. The motions were denied on July 9, 1985 and appellant was sentenced to serve ten (10) to twenty (20) years in prison for the robbery conviction and to serve five (5) to ten (10) years in prison for criminal conspiracy. After his motion to modify or reconsider sentence was denied, he appealed to Superior Court on August 23, 1985. This Court, on October

9, 1985, granted appellee's motion to quash, based upon *Commonwealth v. Green*, 320 Pa.Super. 85, 466 A.2d 1074 (1983).

Appellant's counsel then reargued post-trial motions nunc pro tunc; on January 31, 1986, the trial court denied the post-trial motions. A second appeal was filed with this Court on February 28, 1986. On June 3, 1986, the trial court filed an Opinion supporting the denial of the post-verdict motions. On September 8, 1986, the Superior Court dismissed appellant's second appeal without prejudice to his rights under the Post Conviction Hearing Act. Appellant then took this appeal nunc pro tunc from the January 1986 Order as directed by Judge Robert Dauer in his Order dated May 5, 1987.

The facts surrounding the robbery are as follows. Shortly after 12:00 noon on July 26, 1983, two white men wearing stocking masks entered a pharmacy, pointed a gun at the owner, Molly Winek, and another person who was in the store, Patricia Harms, and ordered them to lie on the floor. The men demanded certain schedule 2 drugs. Winek directed the men to the drugs and the men took the drugs from the shelf and put them into a bag. The men then ordered the women to remain on the floor, face down, and the men fled the store.

James O'Toole, who was sitting in his car just outside the entrance to the pharmacy, observed the two men walk past his car and enter the pharmacy. During the robbery, O'Toole, still in his car, noticed some scuffling taking place in the store. He then observed the same two men as they ran out of the pharmacy and jumped into a waiting car. O'Toole then entered the store and called the police. Officer Richard Montgomery of the Hampton Police Department testified that he received a call pertaining to an armed robbery at the Apothecary Shop at approximately 12:20 that day. Upon his arrival at the scene, James O'Toole gave him a description of the car used in the robbery; O'Toole described it as a red and white Pontiac Ventura, with the top white and the bottom red. O'Toole had said the vehicle

was headed south on Route 8. (At trial, O'Toole testified the car used was a red and white Pontiac Ventura, with a full white vinyl top and was "orangish" red in color, with a sports wheel on the front with a whitewall, and no hubcap in the back. He said he had given that description to the police.) Officer Montgomery broadcast the description of the car over the police radio. Irwin Michaels, who was listening to his police scanner and heard the report, observed a car fitting the description drive up Cole Avenue. Michaels testified he saw a white male with a heavy dark beard run up Cole Avenue. He then notified the police. Both parties agree that Michaels did not identify appellant as the man he saw running up the street.

Sergeant Thomas Duffy located the car and transported O'Toole from the pharmacy to the place where the car was located. O'Toole positively identified the vehicle as the one used in the robbery. The car was parked near the home of appellant's sister, JoAnn DeSabetino, and was registered to John Theakston. Search warrants for both the car and JoAnn DeSabetino's home were obtained and executed, however, no evidence was found.

On July 28, 1983, after the home of JoAnn DeSabetino was searched, O'Toole was shown a series of twenty-seven photographs at the police station. O'Toole narrowed those down to three or four who could possibly be the offender. O'Toole testified that eventually he was able to narrow the photos down to one which was of a man with a receding hairline. He said he did not recall whether he told the police of his degree of certainty that day, but later, at the grand jury proceeding, he had responded he was 75–80 per cent sure, and at trial he was 75–80 per cent certain appellant was the same man. He further testified he was not able to positively say at the time of the photo identification that the photograph was of the perpetrator because the photographs were old and black and white, and hairstyles were different when the photos were taken (T.T. 1/10/85, p. 114). He also explained the appellant's appearance had changed since the robbery in that at the grand jury proceed-

ing he was clean shaven and was dressed nicely, whereas at the robbery he had had a scrubby beard and had worn a sweatshirt. O'Toole said on the date of trial appellant's hairline, sideburns "and so forth" were similar to his appearance at the robbery.

According to the findings of the grand jury, appellant, when questioned by police, admitted to having the car at the time of the robbery. He said he was at his sister JoAnn DeSabetino's house on Cole Avenue. He further stated he and his wife had dropped off the car's owner, John Theakston, on the north side of Pittsburgh that morning, and they had arrived at his sister's house at approximately 12:20 p.m. He had left the house at around 12:30 and the car overheated so he left it at the corner of Kirk and Miller Avenues. Later, before the grand jury, appellant gave a different story which placed him, his wife and their son walking from the overheated car up Cole Avenue and arriving at his sister's house at about 2:30 to 3:00 p.m. The grand jury based its finding that appellant participated in the robbery on: (1) appellant's admitted possession of the vehicle used in the robbery at the time of the robbery; (2) witness identification of appellant as one of the robbers; and (3) appellant's inconsistent explanations of his whereabouts at the time of the robbery.

On appeal, appellant first argues the trial court erred in submitting the case to the grand jury and in denying his motion to quash the information. That motion had averred the indictment was violative of appellant's sixth amendment rights, the district attorney had failed to advise the grand jury that the exact charges had been previously dismissed, and no new evidence connecting appellant to the crime was submitted to the grand jury. He argues to this Court that this case did not warrant a grand jury investigation. We disagree. Appellant relies on cases which were decided prior to the enactment of the Investigating Grand Jury Act, 42 Pa.C.S.A. § 4541, in late 1980. The act provides at section 4543 for an attorney for the Commonwealth to make application to the president judge of the appropriate court

of common pleas for an Order directing that a county investigating grand jury be summoned, stating in such application that the convening of a county investigating grand jury is necessary because of the existence of criminal activity within the county which can best be fully investigated using the investigative resources of the grand jury. The act further provides:

§ 4550. **Submission of investigations by attorney for the Commonwealth to investigating grand jury**

(a) **General rule.**—Before submitting an investigation to the investigating grand jury the attorney for the Commonwealth shall submit a notice to the supervising judge. This notice shall allege that the matter in question should be brought to the attention of the investigating grand jury because the investigative resources of the grand jury are necessary for proper investigation. The notice shall allege that one or more of the investigative resources of the grand jury are required in order to adequately investigate the matter.

(b) **Effect of notice.**—After the attorney for the Commonwealth has filed the notice submitting a matter to the investigating grand jury any or all of the investigative resources of the investigating grand jury may be used as regards the investigation.

42 Pa.C.S.A. § 4550.

The Commonwealth acted pursuant to and within the parameters of the statute which provides more extensive powers to investigate criminal activity than were previously available at common law. Particularly the power to subpoena and the power to recommend contempt proceedings, grants of immunity and actions for perjury provide the ability to reach to the heart of a criminal matter from witnesses which would not be forthcoming under earlier grand jury proceedings or before a district justice. Although no new evidence was produced in a general sense, the information derived from that same evidence and the same witnesses was quantitatively and qualitatively superior, enabling a prima facie case to be established which

might not have occurred otherwise. Appellant's contention in this regard is, therefore, without merit.

■ Appellant next argues frequent references to the photographic array created an undue prejudice to him in that the references denote prior criminal activity. He says failure of counsel to object to these references and to the submission of the three file folders of photographs into evidence and their being shown to the jury constituted ineffective assistance of counsel.

Our Supreme Court recently said in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), counsel's performance is to be evaluated in light of its reasonableness once it is determined the underlying claim is of arguable merit. In addition, the defendant must demonstrate in what way the ineffectiveness prejudiced him. *See, e.g., Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Thus we must first examine the reasonableness of appellant's claims above. In *Commonwealth v. Brown*, 511 Pa. 155, 512 A.2d 596 (1986), the Supreme Court said:

Once, therefore, a police photo file is used that fact can neither be denied nor obviated. It is part of the case and we must accept the fact that there is a possible prejudice. It is here that we must rely upon the common sense of the jurors, their commitment to their oath, fundamental fairness and the implacable logic that the mere possession by the police of one's photo does not prove a prior conviction or the present accusation.

. . . . .

Given that police photo files are an absolute necessity for the detection of crime, we must accept that where used, the jury can be instructed and will respond to a definitive charge by the court that possession by the police of one's picture, of itself, proves no accusation, is irrelevant to any consideration before them, and is not inconsistent with innocence.

The rationale of our previous decisions are not here altered. Previous conviction is not now, as heretofore, an argument that may be used to bolster an accusation.

Hence, neither a reference nor an argument may be made from the existence of police photo files that indicate that they imply or suggest a previous record of conviction. Where used in evidence the court shall charge the jury, when requested by a defendant, that because one's photo is in the possession of the police does not prove a previous conviction, and suggests no more than that there was a previous police contact, the reason for which, is not known and has no bearing on the issues before them.

*Id.*, 511 Pa. at 161–163, 512 A.2d at 599–600.

On the basis of *Brown, supra*, we find no merit to the underlying claims of ineffectiveness asserted in appellant's brief. We also note that while the failure of appellant's counsel to request that the jury be charged as above may have constituted ineffective assistance of counsel, the matter has not been preserved for our review.

 The third issue raised by appellant is that counsel was ineffective for failure to request a cautionary instruction on identification testimony or to object to the court's failure to so charge the jury. In support of this argument, he relies on *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954). The Supreme Court, in *Kloiber*, said:

[W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

*Id.*, 378 Pa. at 424, 106 A.2d at 826–27. We agree with the trial court's Opinion that the identification testimony of the witness O'Toole was consistent throughout. "[H]is testimony was that at the photographic array, at the preliminary hearing and at trial, he was '75% to 80% sure' that defendant was the man he saw leaving the pharmacy." Slip Op., Dauer, J., 5/29/86, p. 4. Moreover, he testified he was in a position to clearly observe the appellant as he entered the store; the time was around 12:00 noon. We conclude that

because the witness had a good opportunity for positive identification and his identifications were not weakened by prior failures to identify appellant or by cross-examination, appellant's contention is without merit. *See Commonwealth v. Starkes*, 268 Pa.Super. 108, 407 A.2d 853 (1979). Additionally, as the jury was made aware of the degree of the witness' certitude, a *Kloiber* charge was not necessary and its absence did not, therefore, result in prejudice to appellant.

■ Appellant's fourth issue is that counsel was ineffective for failure to file a pre-trial motion to suppress identification testimony, since pre-trial identification procedures were unduly suggestive. We agree with the trial judge that the pre-trial procedure was not unduly suggestive and we, accordingly, do not find merit to appellant's underlying claim. The trial court said:

> It must be recalled that the indentification [sic] testimony of the witness O'Toole was consistent throughout: his testimony was that at the photographic array, at the preliminary hearing and at trial, he was '75% to 80% sure' defendant was the man he saw leaving the pharmacy. O'Toole's testimony at trial concerning the photographic array contains no indication the procedure was in any way suggestive. Similarly, nothing in the record indicates any undue suggestiveness surrounded the confrontation at the preliminary hearing. Identification [sic] derived from a pre-trial procedure will be inadmissible if it was obtained from a procedure so impermissibly suggestive and conducive to irreparable mistaken identity as to deny the accused of due process. *Commonwealth v. Voss*, 333 Pa.Super. 331, 482 A.2d 593 (1984). Even if defendant's complaint concerning the propriety of the identification procedure had been preserved by the filing of a pre-trial motion to suppress or by objection at trial, which it has not, the complaint would be, as it is, without merit.

Slip Op., 5/29/86, p. 4–5.

■ Appellant also avers the evidence was insufficient to support the guilty verdict. He bases this claim on

O'Toole's failure to "positively" identify him, and on searches of the appellant's home, his sister's home and the car involved which produced none of the stolen drugs. Our scope of review in evaluating claims based on the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Griscavage*, 336 Pa.Super. 141, 485 A.2d 470 (1984); *Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979). Guilt beyond a reasonable doubt can be shown wholly by circumstantial evidence. *Commonwealth v. Shirey*, 343 Pa.Super. 189, 494 A.2d 420 (1985); *Commonwealth v. Alvarado*, 333 Pa.Super. 63, 481 A.2d 1223 (1984). A thorough review of the record in this case reveals ample evidence upon which appellant could have been convicted.

Appellant's last issue is that the sentence is excessive. Sentencing is within the sound discretion of the court and absent an abuse of discretion will not be disturbed. *Commonwealth v. Simpson*, 353 Pa.Super. 474, 510 A.2d 760 (1986). Appellant was sentenced for both robbery, a first degree felony, and criminal conspiracy, a second degree felony. *See* 18 Pa.C.S.A. § 3701(b) and 18 Pa.C.S.A. § 905(a). Title 18 Pa.C.S.A. § 106(b)(2) and (b)(3) provide that a person convicted of a felony of the first degree may be sentenced to a term of imprisonment, the maximum of which is more than ten years, while a person convicted of a felony of the second degree may be sentenced to a term of imprisonment, the maximum of which is not more than ten years. Appellant was sentenced to serve ten (10) to twenty (20) years in prison for the robbery conviction and five (5) to ten (10) years in prison for criminal conspiracy. Thus this sentence was within the statutory maximum.

As this Court acknowledged in *Simpson, supra*, "[i]n order to be considered an abuse of discretion, a sentence must exceed the statutory limits or be manifestly excessive." *Id.*, 353 Pa.Superior Ct. at 477, 510 A.2d at 761–62.

Appellant was, therefore, sentenced within the confines of the law and we find no manifest abuse of discretion.

 Appellant contends the court erred in sentencing him outside the minimum and aggravated ranges of the sentencing guidelines.[1] This Court recognized in *Commonwealth v. Terrizzi*, 348 Pa.Super. 607, 502 A.2d 711 (1985):

> In *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977), the Supreme Court held that the trial court must state the reasons for its sentence on the record, as such a statement is 'invaluable' in determining 'whether the sentence imposed was based upon accurate, sufficient and proper information.' *Id.*, 474 Pa. at 131, 377 A.2d at 148. In addition, the legislature has required a statement of reasons: 'In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentence, a statement of the reason or reasons for the sentence imposed.'

*Id.*, 348 Pa.Superior Ct. at 609, 502 A.2d at 712.

In *Commonwealth v. Royer*, 328 Pa.Super. 60, 476 A.2d 453 (1984), we said:

> In the instant case, the judge gave his reasons for imposing sentence at the sentencing proceedings, in the appellant's presence, and his statement was recorded and ultimately transcribed as part of the record. We hold that the judge's statement of reasons for the sentence

1. As to applying the guidelines in this case, they would not be made irrelevant by *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987), as footnote 2 therein provides:

 [2] This ruling is applicable to cases where the issue [of constitutionality] has been "properly preserved at all stages of adjudication up to and including any direct appeal." *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983).

 We note that the Supreme Court, in *Sessoms*, did not bar the trial court from *considering* the guidelines in determining an appropriate sentence. Also, *Commonwealth v. Samuels*, 516 Pa. 300, 532 A.2d 404 (1987) provides at note 4, "Inasmuch as Samuels failed to preserve his challenge to the constitutionality of the sentencing guidelines, *Commonwealth v. Sessoms*, [*supra* ] is inapplicable."

made of record at sentencing in the defendant's presence constitutes a 'contemporaneous written statement', within the meaning of the act. The purpose of the contemporaneous written requirement would appear to be to advise the defendant of the reasons for deviating from the guideline and provide a memorial for his use and for appellate review. It would be unreasonable to conclude that the legislature intended that the court do more than that when the sentence imposed is outside the sentencing guidelines.

*Id.*, 328 Pa.Superior Ct. at 69, 476 A.2d at 457.

Here, Judge Dauer made the following remarks to appellant at sentencing which ultimately became part of the sentencing transcript:

The Court has taken into consideration in relating your sentence the information contained in the presentence reports that were furnished to me by the Bureau of Probation and Parole. Court has considered probation which it finds totally inappropriate in this case. The Court has considered the guidelines promulgated by the Pennsylvania Commission on Sentencing. It has also taken into account your previous record. Numerous felonies, felonies of first degree which the Commonwealth of Pennsylvania has made most serious crimes except murder.

As the District Attorney said, I can't see any particular future for you except a future of crime. Judges are supposed to take into consideration not only what a person has done but what he could be. You have been given many chances by the Court—by different Courts, I should say. You have flunked them all.

As your attorney says, the Court very seldom goes outside the guidelines. The Pennsylvania Commission on Sentencing. Not that I agree with those, but we at least concur with what they are trying to do. However, there are some cases I feel the Court has no alternative. You don't even fit into the aggravated range here as far as I

am concerned. All these crimes. Your Attorney seems to think that perjury is not a serious crime. By definition, it is not a crime of violence, but I am not so sure if it doesn't have the same effect as crimes of violence. I have talked to a couple of psychiatrists of people who have been burglarized, and they never get over it. Not as serious as the crime you have committed in this case. Robbery. I am sure the ladies that you had lying on the floor, I believe it was a pharmacy or a store of some sort, won't ever get over it. They were in fear of their lives. I don't know whether you have ever been placed in fear of your life, Mr. DeSabetino, but you did that to these ladies.

For those reasons, sir, at No. 8411001, at the first count charged with robbery, it is the sentence of this Court you be incarcerated in the State Correctional Institution at Pittsburgh for a period of ten to twenty years.

At the charge of criminal conspiracy, count number three, it is the sentence of this Court you be incarcerated in the State Correctional Institution for a period of five to ten years, that to be consecutive to the sentence imposed at count number one.

Count number two would merge for purposes of sentence.

Mr. DeSabetino, that is the maximum I can give you under the law, and it is the opinion of this Court you deserve it.

S.T., 7/23/85, p. 7-8. We find these statements to be adequate reasons for going outside the guidelines.

Last, appellant urges the court erred in sentencing him to serve the conspiracy time consecutive to the robbery time. We disagree. In *Commonwealth v. Brachbill*, 363 Pa.Super. 615, 527 A.2d 113 (1987), we said a conviction of criminal conspiracy does not merge into the offense which was the object of the conspiracy. Thus we find no error.

Judgment of sentence affirmed.