J-S02026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NAEEM JONES | |
| Appellant | No. 1432 EDA 2016 |

Appeal from the PCRA Order April 28, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0006591-2007

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and MOULTON, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 19, 2017**

Appellant, Naeem Jones, appeals from the April 28, 2016 order entered in the Court of Common Pleas of Philadelphia County ("PCRA court"), denying his petition for collateral relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-46.  Upon review, we affirm.

The procedural history of the matter is undisputed.  Following a jury trial from August 18-25, 2008, Appellant was found guilty of first-degree murder and possessing instruments of crime ("PIC").[1]    Appellant was sentenced to life without parole on the murder charge.  After having his direct appellate rights reinstated on November 19, 2010, Appellant appealed

_____

[1] 18 Pa.C.S.A. §§ 2502(a) and 907, respectively.

to this court. On November 15, 2011, this Court affirmed Appellant's judgment of sentence. *See Commonwealth v. Jones*, 3389 EDA 2010, Unpublished Memorandum at 11 (Pa. Super. Filed Nov. 15, 2011). Our Supreme Court denied Appellant's petition for allowance of appeal on April 4, 2012. Appellant filed a timely *pro se* PCRA petition on December 21, 2012. The PCRA court appointed counsel, who filed an amended PCRA petition on August 12, 2015, an addendum to the petition on October 15, 2015, and a motion to supplement evidence on January 20, 2016.

The PCRA court held a hearing on January 21, 2016, and April 1, 2016. Following post-hearing briefs by the parties, the PCRA court denied the petition on April 28, 2016. Appellant filed a timely appeal on May 4, 2016. The PCRA court did not direct Appellant to file a concise statement; however, the PCRA court filed a Pa.R.A.P. 1925(a) opinion on May 24, 2016.

Appellant raises three questions on appeal, which we quote verbatim.

I.    Was trial counsel ineffective for failing to request an alibi instruction where counsel presented alibi testimony and argued that alibi in his closing? Was this failure the cause of significant prejudice to Appellant's cause?

II.   Was trial counsel ineffective for failing to object to the introduction of bad acts evidence, including a police photo, that met none of the exceptions of a Pa.R.E. 404§(b)(1)? Was this failure the cause of significant prejudice to Appellant's cause?

III.  Was after discovered evidence that was wholly exculpatory, credible and compelling enough to warrant a new trial?

Appellant's Brief at 1 (sic).

Our standard of review of a PCRA court's denial of a PCRA petition is well settled.

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

After careful review of the record, the briefs, and the relevant case law, we find that the PCRA court's May 24, 2016 opinion, thoroughly and adequately addresses all of Appellant's claims. ***See*** Trial Court Opinion, 5/24/2016, at 4-12. The PCRA court's findings are supported by the record and are free of legal error. We direct that a copy of the PCRA court's May 24, 2016 opinion be attached to any future filings in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/19/2017</u>

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    : CP-51-CR-0006591-2007

**FILED**

v.

MAY 2 4 2016

NAEEM JONES   Criminal Appeals Unit
First Judicial District of PA

CP-51-CR-0006591-2007 Comm. v. Jones, Naeem
Opinion



7451116811

**OPINION**

McDermott, J.                                             **May 24, 2016**

## Procedural History

On November 8, 2006, the Petitioner, Naeem Jones, was arrested and charged with Murder and related offenses. On August 25, 2008, before the Honorable Carolyn Temin, a jury returned guilty verdicts to First-Degree Murder and Possession of an Instrument of Crime ("PIC"). On December 18, 2008, Judge Temin imposed a term of imprisonment of life without parole for First-Degree Murder.[1] The Petitioner did not file an appeal.

On May 13, 2009, the Petitioner filed a Post-Conviction Relief Act ("PCRA") petition, seeking reinstatement of his appellant rights. On November 19, 2010, the Petitioner's direct appeal rights were reinstated. On December 9, 2010, the Petitioner filed an appeal with Superior Court alleging that the evidence was insufficient to support First-Degree Murder. On November 15, 2011, Superior Court affirmed his judgment of sentence. On December 7, 2011, the Petitioner filed a Motion to Vacate and/or Reconsider Fines, Costs, and Restitution, which Judge Temin denied on December 21. On April 4, 2012, the Supreme Court denied Petitioner's

---

[1] The Petitioner received no further penalty on the PIC charge.

Petition for Allowance of Appeal. On December 21, 2011, the Petitioner filed a PCRA petition. On August 12, 2015, appointed PCRA counsel, Susan Burt, Esquire, filed an Amended Petition alleging layered claims of ineffective assistance and a claim of after-discovered evidence. On October 15, 2015, PCRA counsel filed an addendum to that petition. On December 28, 2015, the Commonwealth filed a Motion to Dismiss, but did not oppose an evidentiary hearing with regard to the Petitioner's after-discovered evidence claim.

On January 20, 2016, PCRA counsel filed a Motion to Supplement Evidence of Ineffectiveness of Trial Counsel, arguing an additional claim. On January 21, 2016, this Court held an evidentiary hearing, in which Robert Corbin testified concerning after-discovered evidence. The hearing was bifurcated, with Corbin's testimony concluding on April 1, 2016. Trial counsel, Fred Harrison, Esquire also testified on this date. On April 21, the Commonwealth filed a Post-Hearing Brief requesting this Court to deny the Petitioner PCRA relief. On April 25, 2016, the Petitioner filed a Supplemental Brief in Support of a New Trial. On April 28, this Court dismissed the Petitioner's claims. On May 4, 2016, the Petitioner filed a Notice of Appeal to Superior Court.

**Facts**

In its November 15, 2011 opinion, the Superior Court summarized the facts as follows:

> On the evening of February 20, 2006, the victim [Steven Bartley] and his friend, Terrance Speller ("Speller"), went to the Big Fells'a sports bar at 33rd and Reed Streets in Philadelphia. Although Speller was treating the bar's patrons to drinks, he and the victim were not warmly received. Testimony was presented that [the Petitioner] argued with Speller about the use of the juke box in the bar. Additionally, one of [the Petitioner's] friends, Charles "Biggie" Waters ("Waters"), had a heated argument with the victim when the victim tried to talk to a woman whom Waters stated was there with him and the [the Petitioner].
>
> Later that evening, Kamira Woods ("Woods") was screaming in the men's bathroom. James Frager ("Frager") and others rushed in and found Speller with his pants and belt open. Speller had his hands around Woods'

2

neck. [The Petitioner] had dated Woods for five years but they broke up the year before, as she alleged he had hit her and threated her. Frager testified that [the Petitioner] and the other men argued with Speller and the victim about this incident until the bartender announced "last call" and the bar patrons thereafter went out onto the street.

Frager testified that when he left the bar, [the Petitioner] was standing outside with the victim, Speller, Waters, and Curtis Scott. A police officer driving to the scene of an unrelated accident observed the victim talking emphatically to another man outside the bar. As Frager got into his car[,] he heard gunshots, but did not observe anything. Frager then observed [the Petitioner] and others standing over the victim immediately after the shooting.

Testimony was presented that the victim died of multiple gunshot wounds and the manner of death was homicide. Dr. Gregory McDonald stated that the victim sustained approximately nine to twelve gunshots[,] fired from at least two semi-automatic weapons. The victim was shot twice in the face at close range. Those bullets penetrated his skull, brain stem, and cerebellum[,] and immediately destroyed his ability to move volitionally. The victim was also shot in the back, arms, legs, and chest. Those bullets pierced his spine, liver, kidney, and lungs.

The Commonwealth presented evidence that later that day, [the Petitioner] called his friend, Vincent Dickerson ("Dickerson"), and stated that there had been a problem with Woods at the bar. [The Petitioner] stated that Woods had been prostituting herself and that he shot a man that was trying to get involved on Woods' behalf. [The Petitioner] told Dickerson that he thought the police were looking for him and that he did not know where to go or what to do.[2] The police encountered [the Petitioner] later that night in an unrelated incident; he was in a car with Biggie and others. The police stopped the car due to a suspicion of marijuana. The car was searched and [the Petitioner] was arrested for drug possession.

Woods gave a statement to the police on February 21, 2006 and November 3, 2006. In her first statement, she omitted reference to [the Petitioner]; in the second [statement], she overcame her fear of him and his history of violence and described his participation in the murder. Woods told police that she observed [the Petitioner] point a gun at the victim, stretch out his arm, and shoot at the victim numerous times. When [the Petitioner] learned that Woods gave a statement to the police on February 21, 2006, he sought her out the next day to ask if the detectives mentioned his name, whose picture they showed her, and whose names the police had. Thereafter, in early November, Dickerson also provided a

---

[2] Dickerson testified that the statement presented by the Commonwealth that the Petitioner confessed was fabricated by police.

3

statement to the police detailing [the Petitioner's] involvement in the murder.[3] [The Petitioner] was arrested on November 8, 2006.

A Cobra Arms M-11 semi-automatic weapon was found in an abandoned house around the corner from 33rd street. Officer Ernest Bottomer, a forensic ballistics expert, testified that the gun was one of the murder weapon. Officer Bottomer testified that there was a least one other gun used in the murder.

The defense presented the testimony of Debbie Royster ("Royster"). Royster testified that when the shots rang out[,] she was in the ladies' room of the bar with [the Petitioner]. Royster averred that she and [the Petitioner] were doing cocaine together at that time and exited the bathroom upon hearing the gunshots.

*Commonwealth v. Naeem Jones*, 3389 EDA 2010 (November 15, 2011) (non-precedential decision) (internal citations omitted).

## Discussion

The Petitioner raises four layered ineffective assistance of counsel claims along with a claim of after-discovered evidence. To obtain relief based on a claim of ineffective assistance of counsel, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is strongly presumed to have rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. 668 (1984); *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013).

To overcome this strong presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test applies by looking to three elements—whether: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, i.e., that there is a reasonable

---

[3] At trial, Woods did not contradict her statement, but indicated that she did not remember the incident due to drug use.

4

probability that the result of the proceeding would have been different. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195–96 (Pa. 2012) (*citing Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). Failure to satisfy any prong of this test for ineffectiveness will require rejection of the claim. *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. Super. 2003). If a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *Bennett*, 57 A.3d at 1196. A "claim has arguable merit where the factual averments, if accurate, could establish cause for relief." *Commonwealth v. Pander*, 100 A.3d 626, 631 (Pa. Super. 2013).

An adequate and properly layered claim must contain more than boilerplate assertions of prior counsel's ineffectiveness, because "[s]uch an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief." *Commonwealth v. Rivera*, 816 A.2d 282 (Pa. Super. 2003) (*quoting Commonwealth v. Abdul-Salaam*, 808 A.2d 558 (Pa. 2001). A layered claim also cannot be sustained where the underlying claim is unmeritorious. *Commonwealth v. Williams*, 950 A.2d 294, 300 (Pa. 2008); *Commonwealth v. McGill*, 832 A.2d 1014, 1021–22 (Pa. 2003). This Court finds that the Petitioner has submitted properly layered claims.

In his first issue, the Petitioner claims that his first PCRA counsel was ineffective for failing to raise the issue that trial counsel did not request records for a landline phone at Dickerson's home.[4] In his statement, Dickerson told police that the Petitioner called him on the phone after the shooting and told him that Woods had been prostituting herself at a bar, and that he shot a man who was trying to get involved on her behalf. The Petitioner also told Dickerson that he thought the police were looking for him and that he did not know where to go. N.T.

---

[4] This claim was added by the Petitioner in his January 20, 2016 Motion to Supplement Evidence of Ineffectiveness of Trial Counsel.

5

8/21/2008 at 188–90. At both the preliminary hearing and at trial, Dickerson refuted his statement and said that he did not own a landline phone at 1518 Corlies Street at the time of the call. N.T. 5/29/2007 at 67; N.T. 8/21/2008 at 193. From a records subpoena issued to Verizon in 2015, the Petitioner maintains that there was no record of a landline at Dickerson's home in 2006.[5] Petitioner argues that because trial counsel knew about this issue from the preliminary hearing, he should have issued a subpoena before trial to verify that Dickerson did not have a landline phone.

The Petitioner has failed to meet his burden in demonstrating that the underlying claim has arguable merit. Based upon the evidence provided, this Court cannot conclude that Dickerson did not have a landline phone. In April 2015, the Petitioner subpoenaed Verizon requesting "[a]ny and all records of a telephone number issued to 1518 S. Corlies Street, Philadelphia, PA during 2006." On April 2, 2015, Verizon's Legal Compliance Office responded by stating that the subpoena was "*being returned . . .* [as] no accounts, documents, records, or other materials were responsive to the legal request, based upon the information provided." Verizon added that, "land line records are *telephone number driven.*" (emphasis added). Verizon's response did <u>not</u> attest that there were not landline phones at 1518 S. Corlies Street. Rather, their response plainly indicated that the subpoena was insufficient as the Petitioner needed to provide more information to fulfill the request. Moreover, even if Verizon could attest that it did not have any landline phones at the subject address, that information would still not be dispositive as Verizon was not the sole provider for landline phones in Philadelphia in 2006. For these reasons, this claim is dismissed.

---

[5] The Petitioner attached Verizon's subpoena response to his January 21, 2006 Motion to Supplement Evidence of Ineffectiveness of Trial Counsel. Although Verizon's response was dated April 2, 2015, Ms. Burt stated that she did not receive the response until January 15, 2016, because it was directed to an address where she no longer received mail.

6

The Petitioner asserts that his first PCRA counsel failed to raise trial counsel's failure to object to evidence that the Petitioner was arrested for a small amount of drugs within a day of the murder. At trial, Officer Gamble testified that he found a small amount of marijuana on the Petitioner during a vehicle stop, about twenty hours after the shooting.[6] N.T. 8/21/2008 at 234. At sidebar, the judge sought the relevancy of the officer's testimony. The Commonwealth stated that the testimony was relevant to show that the description of the Petitioner's clothing at the time of the stop matched his clothing from the shooting. Defense counsel stated that he was cross-examining the officer to show that the Petitioner did not attempt to flee from police during the stop. *Id.* at 251–52.

This Court finds that the Petitioner's claim is without merit as trial counsel offered a reasonable basis—on the record—on why he did not object to the officer's testimony. Further, the drug reference was minimal and not dwelled on by the Commonwealth. For these reasons, the Petitioner cannot show that without this testimony about a small amount of marijuana, a reasonable probability existed that the result of the proceeding would have been different. *See Commonwealth v. Weiss*, 81 A.3d 767 (Pa. 2013) (finding a minimal drug reference that was not dwelled on by the Commonwealth did not amount to prejudice).

The Petitioner also claims that his first PCRA counsel failed to raise trial counsel's failure to object to the jury seeing the Petitioner's photograph related to the marijuana arrest. At trial, when questioning a witness (James Frager) about his police statement, the Commonwealth showed the Petitioner's photograph related to the marijuana arrest. At sidebar, trial counsel indicated that he did not object because the Petitioner was arrested later that day for the subject homicide. N.T. 8/21/2008 at 54–55.

---

[6] The drug charge was dismissed prior to trial.

The Petitioner fails to show prejudice as courts have held that an arrest photo itself does not infer that the Defendant is a criminal. *See Commonwealth v. Lawrence*, 596 A.2d 165, 169 (Pa. Super. 1991) (*abrogated on other ground by Commonwealth v. Jette*, 23 A.3d 1032 (Pa. 2011)). In *Lawrence*, where a photographic array including the appellant's photograph was shown to the jury, the court held that "[a]lthough no testimony existed to explain police possession of the photo, the most that could be inferred from such a reference was that appellant had had prior contact with the police and not a prior record or a previous conviction." 596 A.2d at 169–70; *see also Commonwealth v. Allen*, 292 A.2d 272 (Pa. 1972) (no prejudice found where police assembled a photo array with the Petitioner's police photo); *see also Commonwealth v. Brown*, 512 A.2d 596 (Pa. 1986) (where "mugshots" were shown to the jury, the court held that "prior contact with the police in itself proves nothing. It does not prove a prior record or previous crime, it only proves a previous contact."). Prior contact with the police can occur under a variety of circumstances that are not criminal in nature including involvement in a motor vehicle accident or violation, or being a witness or a victim to a crime. *Commonwealth v. Young*, 849 A.2d 1152, 1156 (Pa. 2004). At best, the photograph in the instant matter indicated prior contact with police; not a prior arrest or conviction.[7] Because the Petitioner cannot show prejudice, he is not entitled to relief.

The Petitioner claims that his first PCRA counsel was ineffective for failing to raise trial counsel's failure to request an alibi instruction. At trial, Royster testified that she was in the bathroom doing drugs with the Petitioner at the time of the shooting; and that after hearing gunfire, she and the Petitioner ran to the bar's front door, which was locked by the bartender,

---

[7] Even if the photograph did indicate a prior arrest, the Petitioner cannot show prejudice as the jury was aware that he was arrested for a small amount of marijuana.

8

temporarily preventing them from going outside. N.T. 8/22/2008 at 233. Defense counsel did not request an alibi instruction; nor was one given in the jury charge.

Failure to request an alibi instruction is not *per se* ineffectiveness. *Commonwealth v. Hawkins*, 894 A.2d 716 (Pa. 2006). For counsel to be deemed ineffective for failing to request an alibi instruction, all three prongs of the *Pierce/Strickland* test for ineffectiveness must be met. *Commonwealth v. Sileo,* 32 A.3d 753 (Pa. Super. 2011) (stating that there must be prejudice for ineffectiveness regarding failure to request an alibi instruction); *see also Hawkins*, 894 A.2d 716 (if counsel had a reasonable explanation for failing to request an alibi instruction, no ineffectiveness is present).[8]

At the evidentiary hearing, trial counsel offered a reasonable explanation for not requesting an alibi instruction. He articulated that he did not request one because the Petitioner was still on the premises at the time of the shooting. Trial counsel believed an argument could still be made that the Petitioner left the bar and committed the murder. N.T. 4/01/2016 at 68–69.

Even if trial counsel did not have a reasonable basis for his inaction, this Court still finds that the Petitioner fails to show how counsel's failure to request an alibi instruction prejudiced him. *Commonwealth v. Ali*, 10 A.3d 282 (Pa. 2010) (Petitioner has not suffered prejudice from counsel's alleged deficient performance unless there is a reasonable probability that the verdict would have been different). Trial counsel highlighted Royster's testimony in closing arguments and argued not only that the jury should evaluate her testimony, but also that the Commonwealth had failed to offer a witness to refute her, including subpoenaing the bartender who Royster had testified locked her and the Petitioner inside the bar. N.T. 8/25/2016 at 63–64. The jury's verdict

---

[8] *Hawkins* found that counsel had a reasonable basis for not requesting an alibi instruction where counsel stated that where alibi testimony is weak, highlighting that testimony explicitly as alibi evidence disserves the defendant's interests. *Commonwealth v. Hawkins*, 894 A.2d 716 (Pa. 2006).

indicates that they chose not to believe Royster's testimony. It is extremely unlikely—with or without an alibi instruction—that the jury would have believed Royster yet still convicted the Petitioner of the crime.

Moreover, the Commonwealth presented overwhelming evidence to support the Petitioner's guilt. Two witnesses placed the Petitioner outside the bar at the time of the shooting. Woods told police that she witnessed the Petitioner point a gun at the victim and shoot him numerous times. Frager testified that when he left the bar, the Petitioner was standing outside with the victim. Immediately after hearing gunshots, Frager saw the Petitioner standing over the victim. In addition to there being two witnesses, the Petitioner also confessed to the murder. Following the shooting, the Petitioner told Dickerson of his involvement in the murder as well as his motive for the shooting. For these reasons, the Petitioner cannot demonstrate prejudice. Thus, no relief is warranted.

This Court examined the cumulative prejudicial effect of the alleged errors of trial counsel, and finds there was no reasonable probability that had these matters been handled differently, the result of the trial would have been different. None of the Petitioner's claims necessitates a new trial. *See Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009) (stating that if multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation). Courts have consistently held that no number of failed claims may collectively warrant relief if they fail to do so individually. *Commonwealth v. Cox*, 983 A.2d 666 (Pa. 2009) (*citing Commonwealth v. Washington*, 927 A.2d 586, 617 (Pa. 2007)). This Court is satisfied that no cumulative prejudice relief is warranted.

Lastly, the Petitioner makes a claim of after-discovered evidence. The Petitioner averred that on June 17, 2015—nine years after the murder—he became aware of a witness, Robert

10

Corbin. Corbin asserted that he witnessed the subject shooting while on his way to purchase cigarettes for his then-fiancé. Corbin, who knew the Petitioner from the neighborhood, claimed that he did not see the Petitioner outside the bar at the time of the shooting and that two other men shot the victim. N.T. 1/21/2016 40–60.

For a new trial, based on after-discovered evidence, the Petitioner must show by a preponderance of the evidence that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004). A PCRA court is tasked with assessing a witness's credibility at a PCRA hearing, and its credibility determinations should be provided great deference by a reviewing court. *Johnson*, 966 A.2d at 539 ("one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made; otherwise, issues of material fact could be decided on pleadings and affidavits alone.").

This Court finds Corbin's testimony contrived, inconsistent, and incredible. First, Corbin's story on why he waited nine years to come forward lacked believability. Corbin testified that he failed to come forward at his mother's request. N.T. 4/1/2016 at 41–42. A year later when his mother died, Corbin again failed to come forward, even though he knew the wrong man had been arrested for the murder—he claimed that his father prevented him from doing so. When his father moved away a few years later, Corbin failed to come forward yet again. In the subsequent years, no longer afraid nor under his parents' control—and admittedly still able to identify the two shooters—Corbin still failed to go the police or inform anyone of what he saw that night. N.T. 1/21/2016 at 59; N.T. 4/1/2016 at 45–49.

11

Next, Corbin's testimony was inconsistent. The record reflects that the shooting occurred right after "last call," at or about 2 a.m. In Corbin's statement attached to the Petitioner's petition, Corbin asserted that he was outside the bar at 1:45 a.m. when he witnessed the shooting. Yet at the evidentiary hearing, Corbin stated that he was outside the bar at 12:40 a.m. N.T. 1/21/2016 at 43. This Court finds this disparity even more glaring since Corbin testified that he knew what time the bar closed—2 a.m.—because the "bar close[d] at the *same time every night*." N.T. 4/01/2016 at 9 (emphasis added).[9]

Finally, Corbin's testimony also conveniently eliminated all of the people who were outside the bar at the time of the shooting. As noted above, Corbin stated that he still could identify the two shooters; yet when shown photographs at the evidentiary hearing of Terrance Speller, Steven Barkley (the victim), Curtis Scott, Charles "Biggie" Waters, as well as James Frager—who witnessed the aforementioned people and the Petitioner outside the bar[10]—Corbin failed to identify any of them as being present outside the bar at the time of the shooting. *Id.* at 22–25, 48–49, 54. Because Corbin was unable to identify any of the participants outside the bar, this Court finds it exceedingly unlikely that he could say with any level of certainty that the Petitioner was not one of those participants. Accordingly, this Court finds Corbin's testimony unlikely to compel a different verdict.

For the foregoing reasons, these claims are DENIED.

BY THE COURT,

Barbara A. McDermott, J

---

[9] This Court is not persuaded by the fact that Corbin later gave an accurate time for the shooting on day two of the bifurcated evidentiary hearing.

[10] Frager testified that everyone he saw inside the bar that night was outside when he left the bar right before the shooting. N.T. 8/21/2008 at 30–31. Woods also told police that Frager was outside the bar at the time of the shooting. N.T. 8/22/2008 at 56.

12