426 A.2d 1167

**COMMONWEALTH of Pennsylvania,**

v.

**Bronson JONES, Appellant.**

Superior Court of Pennsylvania.

Argued March 5, 1980.

Filed March 6, 1981.

Petition for Allowance of Appeal Denied May 13, 1981.

---

Marilyn C. Zilli, Assistant Public Defender, Harrisburg, for appellant.

Marion E. MacIntyre, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before CERCONE, P. J., WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Appellant, Bronson Jones, files this direct appeal to our Court following his conviction, after a jury trial, on charges of robbery and aggravated assault. The charges arose out of a robbery which occurred on September 12,

1978, at a gas station in the City of Harrisburg. During that incident, the sole robber threatened two employees with a hand gun and then shot the manager of the station four times. The Appellant was taken into custody on the same date, and was tried on the charges in early February, 1979. He was represented during pretrial, at trial, and on post-trial motions by privately retained defense counsel. On this appeal, he is represented by the office of the Public Defender of Dauphin County, which was permitted by the lower court to file a supplemental post-trial motion *nunc pro tunc* concerning a suppression issue. The instant appeal was filed following the denial of all post-trial motions and sentencing. The Appellant raises three claims of error on this appeal.

The Appellant's first two claims are closely related. He first contends that the lower court erred in not granting a new trial when it was discovered that the Commonwealth had not delivered certain evidence to the defense prior to the trial. The evidence in issue was the result of a scientific test performed by the Commonwealth after the arrest. Secondly, the Appellant argues that the lower court committed error in refusing to allow defense counsel to comment on the result of the test in his closing address to the jury.

The record shows that the Appellant was arrested at approximately 10:00 p.m. on September 12, 1978, and charged with the robbery which had occurred during the early afternoon of the same day. Coincidental with other arrest procedures, he was apparently given a neutron activation analysis test, which has as its purpose the detection of the presence of chemical residue on the hands of an individual which would indicate that the individual had fired a gun. The results of the test were negative, and the apparent conclusion was that the chemical presence was insufficient to establish that appellant had fired a gun.

The existence of the neutron activation analysis was not revealed to the defense prior to the trial. The prosecuting attorney asserted that he was not aware of the occurrence of the test until a police officer, who was a Commonwealth witness, testified on cross-examination that the test had

been performed. The witness was not asked the result of the test. At the conclusion of the testimony of the officer, the defense filed motions for a mistrial, or in the alternative, for a continuance.

Defense counsel argued that it was required by applicable rules of procedure that the results of all scientific tests performed by the Commonwealth be delivered to the defense prior to trial. In support of his requests for mistrial or a continuance, defense counsel suggested he would make zealous efforts to determine the significance of the neutron activation test data and results. The trial judge refused to declare a mistrial or grant a continuance, but stated that the court would cooperate in any efforts by the defense to secure information relating to the test and its results.

Later in the trial, the prosecuting attorney, during a sidebar discussion, offered to present expert witnesses who would testify that the neutron activation test would not yield conclusive results in view of the delay between the time Appellant was alleged to have shot the gun, and the time the test was performed. The judge responded that the witnesses would have to be made available to be called by the defense. Defense counsel then reported that he had consulted with the chief instructor of "criminalistics" at a local college about the test and had been provided with literature on the subject of residue remaining on the hands after a gun has been fired. Defense counsel stated that he understood from this literature that the absence of some amount of residue, within a given time period, might suggest the conclusion that a suspect did not fire a gun. The court announced that either attorney could present witnesses on the point, and the defense could even read any literature on the subject to the jury. Neither the prosecution nor the defense offered any further evidence on the subject however, and the result of the test was never made known to the jury.

Just prior to closing arguments, another sidebar discussion took place wherein defense counsel announced his intention to make reference in his closing to the neutron activation test, the fact that it was performed on the Appellant, that it

was designed to determine chemically if he had fired a gun, and that no testimony was presented so that "... the jury could make whatever reference (sic) they deemed in order." The trial judge agreed with the Commonwealth's position that such comments would be improper because the jury would be engaging in guesswork, as it did not know the results of the test, and no expert testimony had been presented on the subject. Therefore, the judge ruled that the Appellant's counsel could not argue this point to the jury as he had planned.

 We turn first to the claim that a new trial was required because the Commonwealth did not furnish information to the defense concerning the test prior to trial. This issue may be resolved by reference to Pennsylvania Rule of Criminal Procedure 305, concerning pretrial discovery and inspection. This Rule provides, in pertinent part:

B. Disclosure by the Commonwealth

(1) *Mandatory*: In all court cases, on request by defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth; ...

(e) results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant, which are within the possession or control of the attorney for the Commonwealth;

There is no evidence in the record to indicate that the defense raised any pretrial request to obtain information concerning results or reports of any scientific test, including a neutron activation analysis. Moreover, the record shows

that the Commonwealth made the result known immediately after Appellant's counsel first requested it. As Rule 305 only requires the disclosure of scientific tests "on request by the defendant," we find no support for the Appellant's position in the Rule. We also note that it is not claimed by the Appellant that the results of the neutron activation analysis concerning the Appellant would have been exculpatory, but merely favorable to the defense. Thus, the Appellant had no right to the information, absent a request, under prevailing case law. See *Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976).

The Appellant argues that his position finds support in the leading case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The *Brady* holding prohibited the suppression by the prosecution of evidence favorable to the criminal defendant *after* a request for disclosure by the defense. Quite simply, there is no evidence of any such suppression by the Commonwealth in this case. Evidence of the test and its result were immediately made available after the officer testified the analysis had been performed, and defense counsel asked for the test report. It is also appropriate to point out that following the overruling of Appellant's request for a mistrial, the lower court offered to cooperate with defense counsel in any effort which might be made to obtain whatever information the defense would desire concerning the subject of the test. In view of all of these facts, we reject the Appellant's first contention of error.

■ We next turn to the Appellant's related contention that the lower court erred in denying defense counsel the right to make references in his closing argument to the failure by the Commonwealth to present evidence on the results of the test. We cannot agree that the lower court committed reversible error in these circumstances. The Appellant, during the trial, did not avail himself of the opportunity to read passages from literature allegedly indicating that the negative result of the test suggested that Appellant could not have fired the gun at the time of the robbery. Apparently, the defense was satisfied during the

trial to leave the jury with the limited information that the Commonwealth had conducted such a test and with the awareness that no test results were disclosed. The defense was made aware, during a sidebar discussion, that the Commonwealth offered to produce expert witnesses who would testify that the test results were inconclusive due to the time which had passed between the shooting and the testing of the Appellant. In view of the trial judge's offer to permit either side to present conflicting evidence as to the conclusiveness of the test results, and the failure by either party to do so, it was not error for the judge to refuse the defense the opportunity to suggest what amounted to an adverse inference to the jurors on the point.

Finally, the Appellant contends that the lower court committed error in denying a pretrial defense motion to suppress identification evidence. The identification evidence in question was the in-court testimony of witness Stephen Plant. The purported impropriety involved the fact that Plant was shown a single photograph by police after the robbery and that photograph depicted the Appellant.

It is clear that identification testimony by a witness must be suppressed at trial where the identification is so tainted by an improper pretrial identification procedure that it has no basis independent of the improper procedure. See *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978). Further, we recognize that it has been held that the use by police of a single photograph of a suspect in securing identification by a witness can constitute an improperly suggestive procedure. See *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In the determination of whether there has been improper suggestion underlying identification by a witness we do not look to one factor alone however. Rather, we place the burden on the prosecution to establish clearly that the *totality* of the circumstances affecting the witness' identification did not involve a substantial likelihood of misidentification. *Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976).

We believe the Commonwealth provided adequate proof to overcome any suggestion of a tainted identification

by witness Stephen Plant in this case. At the suppression hearing, Plant testified that he was a gas station employee who was confronted by the armed robber while sitting with another employee. He viewed the robber's face from one foot away for about one minute. He recognized the Appellant as someone he had known at some time earlier in his life, perhaps during school years. He could not immediately recall Appellant's name, and did not recognize him in a substantial book of photographs he was shown by police soon after the incident. However, a short time later the same day he recalled the Appellant's name, and relayed it to the police. In turn, the police obtained a photo of the Appellant from his father, and showed it to the witness. Stephen Plant immediately confirmed that the Appellant was the robber. At the suppression hearing and the trial, he showed no hesitancy or indecision in identifying the Appellant, his old acquaintance, as the robber. Based upon the totality of the circumstances, but especially upon the facts that the witness *knew* the Appellant prior to the robbery, viewed him at close range during the incident, and identified him by name to police *prior* to seeing the single photo, we find no merit in the Appellant's assertion that Plant's identification testimony was tainted and should have been suppressed.

Affirmed.