J-S37039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                         :              PENNSYLVANIA
                         :
          v.                   :
                         :
                         :
TYREE PEEL               :
                         :
        Appellant      :    No. 27 EDA 2022

Appeal from the PCRA Order Entered December 16, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011697-2015

BEFORE: BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY OLSON, J.:            **FILED JANUARY 10, 2023**

Appellant, Tyree Peel, appeals from the December 16, 2021 order entered in the Court of Common Pleas of Philadelphia County, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court summarized the factual and procedural history as follows:

> On the evening of August 15, 2015, Appellant encountered Thomas Holman, decedent, ["the victim"] at [7:00 p.m.] at the intersection of 53rd and Upland Streets in the city and county of Philadelphia, Pennsylvania. The two men conversed briefly, and Appellant drew a handgun. [The victim] turned and tried to run away. Appellant fired several rounds at the unarmed [victim], striking him in the chest, ribs, and buttocks. [The victim] fell and began crawling away from Appellant. Appellant walked toward the victim, stood over him, and shot him in the head, killing him instantly.
>
> [] Appellant's jury trial [began] on May 15, 2017. The Commonwealth presented the testimony of [] two eyewitnesses

who knew the Appellant previously and saw Appellant shoot the victim[.[1]] The Commonwealth also presented testimony from the police and the medical examiner. [The eyewitness] testified that she was standing on the front steps of her home at the time of the shooting. She [contacted the victim] to buy some marijuana from him. [The eyewitness] called out to him when she [saw] him at the nearby intersection [on the day of the incident], but he held up his index finger in a ["]just-a-minute["] gesture and [then] crossed the street. [The eyewitness] saw him talking to Appellant, whom she knew as "Freaky." Moments later, she saw Appellant pull out a [hand]gun, shoot [the victim], and then fire the final shot to the head as he stood over the fallen victim. [Upon seeing this, the eyewitness] ran into her house[. W]hen she came back out, she saw [the victim's girlfriend] cradling [the victim] in the street and crying for help. [The eyewitness] viewed the murder from no more than 30 feet away, in broad daylight.

[The victim's girlfriend] testified that [the victim] was her boyfriend. They were going to a family cookout on the day of the murder, and [the victim] left the house ahead of her. [The victim's girlfriend] followed shortly after. As she left the house, she saw Appellant conversing with [the victim] at the intersection [where the incident occurred, which was] about 45 feet [from where the victim's girlfriend was located. The victim's girlfriend] heard several gunshots a moment later. She dropped her bag and [tele]phone, looked up, and saw Appellant standing over [the victim]. Describing herself as "in shock," [the victim's girlfriend] went to [the victim] as Appellant left. [The victim] was nonresponsive and surrounded by "so much blood." A crowd gathered, and [the] police arrived a few minutes later. The frightened [victim's girlfriend] noticed Appellant looking on from the crowd.

On May 19, 2017, the jury returned a verdict of guilty [on the criminal charges of:] first[-]degree murder, 18 Pa.C.S.[A.] § 2502; possessing an instrument of crime, 18 Pa.C.S.[A.] § 907; carrying a firearm without a license, 18 Pa.C.S.[A.] § 6106; and carrying a firearm on a public street [in Philadelphia, Pennsylvania], 18 Pa.C.S.[A.] § 6108. On May 19, 2017, the trial court sentenced Appellant to a mandatory term of life in prison

---

[1] For ease of identification and distinction, we refer to the two eyewitnesses as "the eyewitness" and "the victim's girlfriend."

without the possibility of parole [for Appellant's first-degree murder conviction. The trial court also imposed] an aggregate sentence of ten [] to twenty [] years[' imprisonment] to run consecutive[ly] to the term of life [in prison] for the remaining charges. Appellant filed post-sentence motions on May 26, 2017, which the trial court denied on September 25, 2017[,] by operation of law.

Appellant filed a timely appeal on October 23, 2017. Appellant raised a single claim on direct appeal: [whether] the trial court erred in denying his request for a *Kloiber*[2] instruction to be given to the jury[? This Court] affirmed his judgment of sentence on [November 14, 2018,] and [our] Supreme Court denied Appellant's petition for allowance of appeal on April 23, 2019. [*See Commonwealth v. Peel*, 2018 WL 5961394 (Pa. Super. filed Nov. 14, 2018) (unpublished memorandum), *appeal denied*, 207 A.3d 287 (Pa. 2019).]

PCRA Court Opinion, 6/29/22, at 1-3 (extraneous capitalization omitted).

On July 9, 2020, Appellant filed *pro se* a PCRA petition, his first. Counsel was appointed for Appellant, and on January 22, 2021, counsel filed an amended PCRA petition that included, *inter alia*, a request for a PCRA evidentiary hearing. On April 13, 2021, counsel filed a motion for leave to file a supplemental amended PCRA petition. That same day, counsel filed a supplemental amended PCRA petition.[3] On August 3, 2021, the

---

[2] *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954). "A *Kloiber* instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have the opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." *Commonwealth v. Williams*, 255 A.3d 565, 577 n.15 (Pa. Super. 2021) (citation omitted).

[3] The PCRA court docket does not include an order granting Appellant's request to file a supplemental amended PCRA petition. Nonetheless, because a

Commonwealth filed a motion to dismiss Appellant's supplemental amended PCRA petition. On November 22, 2021, the PCRA court provided Appellant notice, pursuant to Pa.R.Crim.P. 907, of its intent to dismiss his PCRA petition without an evidentiary hearing and provided Appellant 20 days to file a response. Appellant did not file a response. On December 16, 2021, the PCRA court dismissed Appellant's PCRA petition. This appeal followed.

Appellant raises the following issues for our review:

1. Did the PCRA court err in dismissing Appellant's PCRA petition without [an evidentiary] hearing because trial counsel was ineffective for failing to file a motion to suppress the single photograph identifications of Appellant?

2. Did the PCRA court err in dismissing Appellant's PCRA petition without [an evidentiary] hearing because trial counsel was ineffective for not calling Sharon Butcher or other identifiers of [a person other than Appellant as the shooter] as witnesses and confronting them with police paperwork that indicated that they had identified [this second person] as the shooter?

Appellant's Brief at 4 (extraneous capitalization omitted).

In addressing Appellant's issues, we are mindful of our well-settled standard and scope of review of an order denying a PCRA petition. Proper appellate review of a PCRA court's denial of a petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988,

_____

supplemental amended PCRA petition was filed and accepted by the PCRA court, it logically follows that the PCRA court granted Appellant's motion for leave to file the same.

992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

Appellant's issues raise claims alleging that trial counsel provided ineffective assistance. Appellant's Brief at 9-16. "It is well-established that counsel is presumed effective[.]" *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012), *citing* *Strickland v. Washington*, 466 U.S. 668, 687-691 (1984). To plead and prove a claim of ineffective assistance of counsel, "a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 463 (Pa. 2014). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). "In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine

whether counsel's decisions had any reasonable basis." ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007).

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his[, or her,] client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987). A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's [acts or omissions], the result of the proceeding would have been different." ***Commonwealth v. Johnson***, 966 A.2d 523, 533 (Pa. 2009).

Appellant's first issue alleges trial counsel was ineffective for failing to file a motion to suppress the single photograph identifications of Appellant as the shooter by the eyewitness and the victim's girlfriend. Appellant's Brief at 9-12. Appellant asserts that, on February 15, 2017, he filed *pro se* a motion to suppress the single photograph identifications by the eyewitness and the victim's girlfriend and that trial counsel was ineffective for failing to litigate said motion or to file a similar motion. ***Id.*** at 11. Appellant contends that he was admitted to a health care facility prior to the incident and, as such, the eyewitness and the victim's girlfriend "could not have seen Appellant in the area [of the incident] every day prior the murder" as they testified to at trial.

*Id.* Appellant argues that, because the two witnesses could not have seen him in the area every day prior to the incident, they did not have sufficient familiarity with him to overcome the unduly suggestive nature of the single photograph identification process. *Id.* at 10-11. Appellant contends that trial counsel was aware of Appellant's admission into a health care facility prior to the incident and was ineffective for failing to file a motion to suppress the results of the single photograph identifications of Appellant as the shooter by the two witnesses. *Id.* at 12.

"The failure to file a suppression motion may be evidence of ineffective assistance of counsel[, but] if the grounds underpinning the suppression motion or objection are without merit, counsel will not be deemed to have been ineffective in failing to so move or object." ***Commonwealth v. Ransome***, 402 A.2d 1379, 1381-1382 (Pa. 1979); ***see also Commonwealth v. Watley***, 153 A.3d 1034, 1044 (Pa. Super. 2016), *appeal denied*, 169 A.3d 574 (Pa. 2017). A petitioner "must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." ***Watley***, 153 A.3d at 1044.

> [A] pretrial procedure in which a witness views a photograph of the accused in an effort to "elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." ***United States v. Wade***, 388 U.S. 218[] (1967); ***see also Simmons v. United States***, 390 U.S. 377[] (1968); ***Gilbert v. California***, 388 U.S. 263[] (1967). If such an identification procedure of the accused is "so unnecessarily suggestive and conducive to irreparable mistaken identification, the accused is

denied due process of law." ***Stovall v. Denno***, 388 U.S. 293, 302[] (1967). It is clear, then, that photographic identification of a person is unduly suggestive if, under the totality of the circumstances, the identification procedure creates a substantial likelihood of misidentification. ***See Commonwealth v. DeJesus***, [] 860 A.2d 102 (Pa. 2004).

***Commonwealth v. Crork***, 966 A.2d 585, 588 (Pa. Super. 2009) (original brackets omitted), *appeal denied*, 981 A.2d 217 (Pa. 2009). In evaluating the totality of the circumstances, courts should consider

(1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification.

***Commonwealth v. Fowler***, 352 A.2d 17, 21 (Pa. 1976); ***see also Commonwealth v. Sutton***, 436 A.2d 167, 169 (Pa. 1981) (stating, circumstances to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the confrontation, and time between the crime and the confrontation").

In finding that Appellant's underlying claim was without merit, the PCRA court stated,

[The eyewitness and the victim's girlfriend] each had an independent basis for their identification of Appellant. [The eyewitness] testified that she was on her front step watching

- 8 -

because she was waiting to buy marijuana from the victim. According to [the eyewitness,] it was broad daylight, and she was only about 25 or 30 feet away from Appellant and the victim. [The eyewitness] testified that she knew Appellant as "Freaky," [] that she knew Appellant well[,] and that she saw him in the neighborhood most every day. [The victim's girlfriend] also testified that she was only about 45 feet away from Appellant and the victim and that she saw Appellant in the neighborhood. Regarding how often [the victim's girlfriend] saw Appellant in the neighborhood, she testified "you could say almost every day" [for a couple of] months before the murder.

PCRA Court Opinion, 6/29/22, at 5-6. The PCRA court concluded that "[t]here is no merit to the argument that the identifications made by [the eyewitness and the victim's girlfriend] should have been suppressed." *Id.* at 6. Because the underlying claim was without merit, the PCRA court determined that Appellant's ineffective assistance claim based on trial counsel's failure to file a motion to suppress the single photograph identifications was without arguable merit. *Id.*

Appellant's assertion that neither identification witness had sufficient familiarity with Appellant to overcome the suggestive nature of their single photograph identifications of him as the shooter is belied by the record. The eyewitness testified that she knew Appellant, who she referred to as "Freaky," from seeing him around the neighborhood in which she resided. N.T., 5/16/17, at 91-92. When asked how many times she had seen Appellant prior to the incident, the eyewitness stated that she saw him "mostly every day" in

the neighborhood.[4]  *Id.*  On the day of the incident, the eyewitness observed the interaction between Appellant and the victim from no more than 20 feet away.  *Id.* at 85-86.  The eyewitness was focused on the victim, and his subsequent interaction with Appellant, because she had "called out" to the victim, upon seeing him in the street, and wanted to speak to him.  *Id.* at 85. The victim indicated to the eyewitness that he would come see her momentarily, before he began to interact with Appellant.  *Id.*  The eyewitness observed Appellant from a side profile when he initially shot the victim several times before walking away from the victim.  *Id.* at 87-91.  When Appellant walked back to the victim to administer the fatal shot, the eyewitness observed a "full view" of Appellant's face.  *Id.* at 90-91, 103.  The eyewitness, who was 14 years old at the time of the incident, did not speak to the police investigating the crime scene on the day of the incident because she was "scared."  *Id.* at 92.  Rather, the eyewitness contacted the police three days after the incident on August 18, 2015.  *Id.* at 93; *see also id.* at Commonwealth Exhibit 26.  During her police interview, the eyewitness, in recalling the incident, first identified the shooter verbally to the police as "Freaky" and later, upon being shown a single photograph of Appellant,

---

[4] In her police investigation interview record, the eyewitness stated that she first moved to "the neighborhood" in November 2014, which is when she first became aware of Appellant.  N.T., 5/16/17, at Commonwealth Exhibit 26.

confirmed that Appellant was the person she referred to as "Freaky."[5]  **Id.** at Commonwealth Exhibit 26.

The victim's girlfriend testified that she observed Appellant and the victim initially talking and laughing with each other from 45 feet.  N.T., 5/16/17, at 132-133.  At the time, the victim's girlfriend knew Appellant only by the nickname "Freaky".  **Id.** at 133; **see also** Commonwealth Exhibit 27. The victim's girlfriend knew of Appellant for several months prior to the incident because of Appellant's association with her boyfriend.  N.T., 5/16/17, 133-134; **see also id.** Commonwealth Exhibit 27.  The victim's girlfriend, who initially was talking on her cellular telephone, became focused on the interaction between Appellant and the victim after hearing gunshots.  N.T., 5/16/17, 133-136.  When the victim's girlfriend turned her attention toward the gunshots, she observed Appellant from a side profile standing over the victim as he administered the fatal shot to the victim's head.  **Id.** at 136-138. Appellant then ran from the scene of the incident.  **Id.** at 138.  As the victim's girlfriend remained with the victim and after police and emergency personal arrived and a crowd of on-lookers gathered, the victim's girlfriend observed Appellant standing in the crowd.  **Id.** at 140.  The victim's girlfriend did not indicate to the police that Appellant was present in the crowd because she was

---

[5] The photograph shown to the eyewitness and on which the eyewitness wrote the name "Freaky" before signing and dating the photograph did not display Appellant's legal name or other identifying information.  N.T., 5/16/17, at Commonwealth Exhibit 26.

scared. *Id.* at 140. Rather, the victim's girlfriend spoke to the police three days after the incident on August 18, 2015. *Id.* at 141; *see also id.* at Commonwealth Exhibit 27. During her police interview, the victim's girlfriend first identified the shooter as the person she knew only by the nickname "Freaky." *Id.* at Commonwealth Exhibit 27. After being shown a single photograph of Appellant and being asked if she knew the person depicted therein, the victim's girlfriend responded that the person in the photograph was the person she knew as "Freaky."[6] *Id.*

The totality of the circumstances surrounding the use of the single photograph of Appellant in both eyewitness identifications was not unduly suggestive and did not create a likelihood of misidentification. Both the eyewitness and the victim's girlfriend closely observed the interaction between Appellant and the victim from short distances. Both eyewitnesses recognized the shooter as the person they knew as "Freaky," based upon their observations of Appellant in the neighborhood or their observations of Appellant interacting with the victim during the several months prior to the incident. Moreover, both eyewitnesses identified "Freaky" as the shooter prior to being shown a photograph of Appellant. The photograph merely corroborated that the person both eyewitnesses knew only by the nickname

_____

[6] The photograph shown to the victim's girlfriend and on which the victim's girlfriend wrote the nickname "Freaky" before signing and dating the photograph did not display Appellant's legal name or other identifying information. N.T., 5/16/17, at Commonwealth Exhibit 27.

"Freaky" was, in fact, Appellant. Therefore, we concur with the PCRA court that Appellant's underlying claim – the failure to file a motion to suppress the single photograph identifications – was without merit and that trial counsel cannot be ineffective for failing to raise a meritless claim. **See Commonwealth v. Rivera**, 199 A.3d 365, 374 (Pa. 2018) (stating, if the underlying claim is deemed meritless, trial counsel cannot be found to be ineffective for failing to raise a meritless claim).

Appellant's second issue raises a claim that trial counsel was ineffective for failing to call, at trial, a potential witness, namely Sharon Butcher, who identified a person other than Appellant as the shooter.[7] Appellant's Brief at 12-16. Appellant asserts the alternate shooter's *alibi* for the time of the incident consisted of a retail store receipt and video surveillance depicting the alternate shooter in the retail establishment. Appellant claims, however, that the surveillance footage did not contain a date or timestamp indicating that it was from the day of the incident. **Id.** at 14. Appellant contends that Butcher's testimony would have contradicted the alternate shooter's *alibi* because she

_____

[7] Appellant contends that Dexter Stinson also identified the same alternate person as the shooter. Appellant's Brief at 14. In his Supplemental Amended PCRA petition, Appellant asserts that "[Appellant] wanted [] Butcher called as a witness [] but she was not [called as a witness] despite being available and present at trial." Supplemental Amended PCRA Petition, 4/13/21, at 8; **see also** Appellant's Brief at 14. Appellant failed to aver that trial counsel was ineffective for failing to call Stinson as a potential witness at trial and, as such, has waived this claim.

would have testified that she observed the alternate shooter in the area at the time of the incident. *Id.*

To reiterate, the three prongs of an ineffectiveness claim are: (1) arguable merit, (2) lack of reasonable basis or strategy, and (3) prejudice. *Stewart*, 84 A.3d at 706. To establish the arguable merit prong of the three-prong ineffectiveness test based on a failure to call a potential witness to testify at trial, the petitioner must prove that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Matias*, 63 A.3d 807, 810-811 (Pa. Super. 2013) (citations omitted), *appeal denied*, 74 A.3d 1030 (Pa. 2013). In this context, to establish prejudice, the petitioner "must show how the [potential witness'] testimony would have been beneficial under the circumstances of the case" and "helpful to the defense" such that the absence of the testimony denied the petitioner a fair trial. *Id.* at 811 (citation omitted); *see also Commonwealth v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005) (holding, "[t]rial counsel's failure to call a [potential witness] does not constitute ineffective assistance without some showing that the [potential] witness' testimony would have been beneficial or helpful in establishing the asserted defense"), *cert. denied*, 549 U.S. 848 (2006).

In addition to establishing arguable merit, a petitioner must also demonstrate that there was no reasonable basis for failing to call a potential witness and that the failure to call a potential witness prejudiced the petitioner such that there was a reasonable probability that the witness' testimony would have resulted in a different outcome at trial. **Stewart**, 84 A.3d at 706; **see also Commonwealth v. Robinson**, 278 A.3d 336, 345-349 (Pa. Super. 2022).

In denying Appellant's ineffectiveness claim on this ground, the PCRA court found that Appellant was "unable to establish that [Butcher] was available and willing to testify [and] unable to show that [trial] counsel did not have a reasonable basis for his act or omission[.]" PCRA Court Opinion, 6/29/22, at 8. The PCRA court explained,

> Appellant failed to supplement his [ineffectiveness] claim with evidence that [trial] counsel did not have a reasonable basis for deciding not to use evidence of an [alternate] suspect. Appellant did not supplement his petition with evidence that [] Butcher was available and willing to testify. There is evidence to believe that [] Butcher [] would not have been willing to testify because [she] declined to go to [the police] homicide [unit] to provide a [formal] statement. Moreover, there was evidence that [the alternate shooter] was at a [retail establishment] at the time of the murder. Even though[] Appellant claimed there was no surveillance video to corroborate [the alternate shooter's] *alibi*, [the] Commonwealth noted that surveillance video showed [the alternate shooter] at a [retail establishment] and [the alternate shooter] also had a receipt for the [retail establishment].

*Id.* at 8.

The record demonstrates that on the evening of the incident, a police officer was "flagged down" by two individuals, one of whom was Butcher. N.T.,

- 15 -

5/17/17, at Commonwealth Exhibit 53. Butcher reported that she observed a male, who she knew as "Van" running in the area of the incident shortly after she heard gunshots. *Id.* Although Butcher provided a verbal statement to the police officer, she refused to go to the police homicide unit to provide a formal written statement. *Id.* Detective Tracy Bayard, who served as the lead investigator for the incident, stated that based upon information gathered during the investigation, including, *inter alia*, the statement by Butcher, the alternate shooter became a "person-of-interest" in the investigation. *Id.* at 58-59. The alternate shooter came forward two days after the incident and provided an *alibi* to the police that established he was at a retail establishment at the time of the incident. *Id.* at 60-61. The alternate shooter's *alibi* consisted of, *inter alia*, a sales receipt from the retail establishment issued on the date of the incident and timestamped for a time close to when the incident occurred. *Id.* at 61. Police officers corroborated the alternate shooter's *alibi* by viewing video surveillance from the retail establishment that showed the alternate shooter at the retail establishment near the time of the incident. Although the video surveillance footage did not contain a timestamp and a copy of the surveillance footage could not be obtained, Officer Bayard stated that she captured a photograph of the still-frame from the surveillance footage showing the alternate shooter at the retail establishment near the time of the incident. *Id.* at 63-64; *see also* **id.** at Commonwealth Exhibit 83. Based upon the sales receipt and the video surveillance, Officer Bayard eliminated the alternate shooter as a suspect. *Id.* at 64.

Upon review, we concur with the PCRA court that Appellant's claim of ineffective assistance for failing to call a potential witness lacks arguable merit. Appellant failed to demonstrate how the absence of Butcher's testimony was so prejudicial as to have denied him a fair trial. Detective Bayard testified that she was aware, as part of her investigation, that Butcher identified an alternate shooter running in the area on the day of the incident shortly after she heard gunshots. Based upon Butcher's verbal statement, the alternate shooter became a person-of-interest to the police but was later eliminated as a suspect once his *alibi* was corroborated. Butcher's testimony would have provided only cumulative information – namely the notion of an alternate shooter – that was already presented by the Commonwealth.[8] Therefore, we discern no error of law or abuse of discretion in the PCRA court's denial of Appellant's ineffectiveness claim on this ground.[9]

Order affirmed.

_____

[8] Moreover, Appellant failed to demonstrate that Butcher was available and willing to testify for the defense at trial. Although Butcher provided a verbal statement to the police on the date of the incident, she declined to provide a formal written statement.

[9] We discern no error in the PCRA court's denial of Appellant's petition without an evidentiary hearing. Appellant's supplemental amended PCRA petition did not contain a certification, as required by 42 Pa.C.S.A. § 9545(d)(1), that included, *inter alia*, the witness's name, address, date of birth, and a brief summary of her proposed testimony. 42 Pa.C.S.A. § (d)(1)(i and ii). As such, Appellant's failure to comply with Section 9545(d)(1) would have rendered the potential witness's testimony inadmissible at an evidentiary hearing. 42 Pa.C.S.A. § 9545(d)(1)(iii).

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/10/2023</u>